[No. B064755. Second Dist., Div. Three. Dec. 20, 1993.]

RAMONA CONVENT OF THE HOLY NAMES, Plaintiff and Appellant,
v.
CITY OF ALHAMBRA, Defendant and Respondent.

14

**COUNSEL**

Sullivan, Workman & Dee, Roger M. Sullivan, Henry K. Workman, Crosby, Heafey, Roach & May, Gideon Kanner, M. Reed Hunter and Susan A. Beytin for Plaintiff and Appellant.

Leland C. Dolley, City Attorney, Burke, Williams & Sorensen and Robert V. Wadden, Jr., for Defendant and Respondent.

**OPINION**

KLEIN, P. J.—Plaintiff and appellant Ramona Convent of the Holy Names (Ramona) appeals a judgment in favor of defendant and respondent City of Alhambra (the City) following the grant of a motion for summary adjudication which disposed of all issues between the parties.

Ramona desires to sell 1.97 acres of its campus to generate funds for school purposes. The essential issue presented is whether the City's general plan and conforming open space zoning have resulted in a taking of that portion of Ramona's property.

While the zoning of the parcel denies Ramona the highest and best use of the property, it does not amount to a taking. Thus, the trial court properly rejected Ramona's inverse condemnation claim. The judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Ramona has operated a Catholic girls' school in Alhambra since 1889. The school is located on a parcel of land measuring about 19.17 acres owned by Ramona. In 1986, to remedy a deficiency in the amount of open space in Alhambra, the City's zoning and general plan designation for the subject property, and for school properties generally, were changed from "Multiple Family" (R-3) to "Open Space." Thus, Ramona's entire property now is zoned as open space and is designated as open space under the land-use element of the City's general plan.

In the 1987 Whittier earthquake the school's main building sustained extensive damage. To pay for this major expense Ramona decided to sell 1.97 acres at the northwest corner of the campus, which area had been used as a softball diamond.

Wonder Enterprises, Inc. (Wonder), a private developer, obtained an option to purchase the 1.97-acre site, on which it intended to construct 88 senior citizen residential units.

In May 1989, Ramona filed an application for a tentative tract map which would provide for a lot split to divide the property into a 17.2-acre parcel and a 1.97-acre parcel.

The City's planner notified Ramona's engineer the application was incomplete because it lacked a development proposal. They agreed the application would be combined with the senior citizen housing proposal on the 1.97-acre site.

Wonder sought City sponsorship for the project which would have allowed it to build 88 units under a density bonus incentive. The city council voted not to sponsor the proposed project. Absent such sponsorship, the maximum density would be 59 units. Wonder withdrew its application for the 88-unit project.

Ramona's engineer informed the City that Ramona still wanted to proceed with the processing of its lot split application despite the fact it was unaccompanied by a proposed development project.

At a November 6, 1989, hearing, the planning commission rejected Ramona's argument the application was "deemed approved" by the City's

---

[1]This summary is based in part on this court's prior opinion in this matter filed September 4, 1992. (No. B054958.)

failure to act within the statutory time limits. The commission then denied Ramona's application.

Ramona appealed that determination to the city council. On January 8, 1990, the city council denied Ramona's application on the grounds it would not promote the City's goal of open space and was inconsistent with the City's general plan.

On March 23, 1990, Ramona commenced this action by filing a petition for writ of mandate pursuant to Code of Civil Procedure sections 1085 and 1094.5, combined with damages claims for inverse condemnation and violation of civil rights.

On September 26, 1990, following a hearing, the trial court denied Ramona's petition for a writ of mandate. Based on the City's declarations, the trial court found the parties had agreed to extend the time for acting on Ramona's application, and thus, the application was not "deemed approved" for the City's failure to act timely pursuant to Government Code section 66452.4. The trial court also found no abuse of discretion in the denial of Ramona's application.

Ramona appealed, contending there was no substantial evidence to support the City's determination the lot split would be inconsistent with the general plan, and that it had been denied a fair trial before the city council and the trial court.

On September 4, 1992, this court affirmed the judgment denying the petition for writ of mandate.[2] We held the City was entitled to deny approval of the lot split application if the design of the proposed subdivision were inconsistent with the applicable general and specific plans. Because the resultant 1.97-acre parcel would have been too small to be conducive to any of the uses permitted for open space, there was no abuse of discretion in the denial of Ramona's application. As for Ramona's other contention, Ramona had conceded its denial of due process claim "may be somewhat academic because the 'deemed approved' statute could not rescue a lot split which was inconsistent with the general plan." Because the proposed lot split in fact conflicted with the general plan, the denial of Ramona's due process claim was moot.

As for the remaining third and fourth causes of action, inverse condemnation and violation of civil rights, on June 10, 1991, the City filed a motion

---

[2]Ramona did not seek further review by way of a petition for rehearing or for review and the decision became final.

in the trial court for summary adjudication. It contended, inter alia, the inverse condemnation claim was not ripe, the open space zoning ordinance did not effect a taking as it did not deny Ramona all use of its property,[3] and if the inverse condemnation claim were improper the civil rights claim must fail as well.

Ramona opposed the motion, arguing, inter alia, the City had failed to cite any evidence to support its assertion the Alhambra open space zoning ordinance did not deprive Ramona of all use of the property.

Ramona submitted a supporting declaration by its financial officer, Sister Marion Patrick. She stated: The 1.97-acre site was vacant and was being used as a baseball field, a use not essential to the school's purpose and which would be accommodated elsewhere. Ramona had been operating for years at a financial deficit and the sale of the 1.97-acre parcel for residential development was the only source of funding to repay the loan required to rebuild the earthquake-damaged structure. If the loan were not repaid, the existence of Ramona, a Roman Catholic educational institution that had provided academic and religious training to young women for a century, would be jeopardized.

Ramona's opposition papers also included a supporting declaration from a real estate appraiser, James J. Reid, who stated: Most of the uses which were permitted or conditionally permitted within the open space zone, e.g. public parks, flood-control channels and utility substations, were public or quasi-public in nature and of no practical use or value to a private property owner

---

[3]Chapter 23.34 of the Alhambra Municipal Code, pertaining to open space or OS zones, states in relevant part: "23.34.010 *Purpose.* [¶] In order to establish and provide outdoor recreation and open space resources, and to prevent inappropriate development of areas which should be regulated to provide for scenic, recreational, historic, conservation, aesthetic or public health and safety uses, the regulations set out in this chapter shall be applicable to all lots classified in the OS zone. [Citation.] [¶] 23.34.020 *Permitted uses.* [¶] No person shall use, nor shall any person permit the use of, any property classified in the OS zone, for any use other than the following: [¶] 1. Public recreational uses such as parks, playgrounds and recreation areas, excepting buildings and structures thereon; [¶] 2. Golf courses and country clubs, excepting buildings and structures thereon; [¶] 3. Flood-control channels; [¶] 4. Public utility rights-of-way; [¶] 5. Creeks, rivers, spreading grounds and other similar water courses. [Citation.] [¶] 23.34.030 *Conditionally permitted uses.* [¶] The following uses may be permitted subject to the approval of a conditional use permit pursuant to the provisions of Chapter 23.66 of this title: [¶] 1. *Educational institutions*; [¶] 2. Buildings and structures accessory to and located within the areas set forth in Section 23.34.020 above; [¶] 3. Churches [¶] 4. Agricultural and horticultural cultivation; [¶] 5. Water wells, reservoirs, tanks, dams, treatment plants, gauging stations, pumping stations and any use normal and appurtenant to the obtainment, storage and distribution of water; [¶] 6. Utility substations and distribution stations; [¶] 7. Burial parks, cemeteries, columbariums and mausoleums; [¶] 8. Commercial antennae; [¶] 9. Fire and police stations; [¶] 10. Stables and riding academies; [¶] 11. Libraries and museums; [¶] 12. Outdoor nursery storage. [Citation.]" (Italics added.)

such as Ramona. As for the nonpublic uses which were permitted or conditionally permitted, e.g., agricultural cultivation, burial parks, stables and riding academies, none of those uses was appropriate for the 1.97-acre parcel because of the size, location and/or topography of the site. He was advised Ramona did not require the 1.97-acre parcel for its educational institution. As a result, from a planning perspective, the open space zone provided Ramona with no practical or economic use of said parcel.

The motion for summary adjudication of issues was heard on September 19, 1991, and was taken under submission. On December 13, 1991, the trial court entered an order granting summary adjudication as to the third and fourth causes of action. It found the inverse condemnation claim was not ripe because Ramona had not pursued all available remedies to develop the use of the property commensurate with the existing permissible uses and further had failed to show that all of the property's beneficial uses were destroyed or prevented by the City's actions. It also found the civil rights claim against the individual defendants, members of the city council and the city clerk, was barred on the grounds of immunity.

Ramona appealed.[4]

## CONTENTIONS

In sum, Ramona argues the City's general plan and conforming zoning have impacted its property so as to work a taking or damaging for which compensation is due, and the City has otherwise violated its constitutional and civil rights.

Ramona makes the following contentions: (1) summary adjudication was erroneously granted because the City failed to establish there were no disputed issues of material fact; (2) Ramona's property has been taken without just compensation; (3) Ramona's taking claim is ripe for adjudication; (4) the City's actions unconstitutionally impinge upon Ramona's right to free exercise of religion; (5) the City violated Ramona's civil rights by denying it due process, equal protection, just compensation and free exercise of religion; and (6) the trial court erred in finding the individual defendants immune from the consequences of their unconstitutional conduct.

---

[4]We construe the February 10, 1992 notice of appeal to refer to the judgment filed April 14, 1992. (Cal. Rules of Court, rule 2(c).)

## DISCUSSION

1. *Standard of appellate review.*

The purpose of the summary judgment procedure is not to try the issues but merely to discover, through the medium of affidavits, whether there are issues to be tried and whether the parties possess evidence which demands the analysis of trial. (*Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 468 [33 Cal.Rptr. 661]; *Orser* v. *George* (1967) 252 Cal.App.2d 660, 669 [60 Cal.Rptr. 708].)

A defendant moving for summary judgment has the burden of establishing a complete defense or negating each of the plaintiff's theories and establishing the action is without merit. (*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 666 [150 Cal.Rptr. 384, 12 A.L.R.4th 27]; *Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].)

After examining the facts before the trial court on a summary judgment motion, we independently determine their effect as a matter of law. (*California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 730-731 [284 Cal.Rptr. 687].) The trial court's stated reasons for its ruling do not bind us; we review the ruling, not its rationale. (*Id.*, at p. 731.)

In that review, we uphold the trial court's ruling in this matter.

2. *The case is ripe for adjudication.*

■ The City contends Ramona's case is not ripe for adjudication because the application for senior citizen housing was withdrawn and at the time the lawsuit was filed, Ramona had not officially proposed any use for the property.

We agree with Ramona's position in this regard. It appears the case is ripe for adjudication because the City has identified definitively the uses it will permit for the property.

In its answer, the City pled it had designated and zoned Ramona's property as open space and had denied a parcel map application "in furtherance of the public goal of preserving open space consistent with the City's general plan."

Further, at a hearing on the tentative parcel map application, the city manager explained that to remedy the deficiency in the amount of open

space in Alhambra, all schools which had been zoned multiple family were rezoned to open space and "it would be inconsistent with the General Plan to permit any other type of use *now·or in the future*[.]" (Italics added.)

In view of the above, the City has reserved the subject property for specific open space uses. Accordingly, the matter is ripe.

3. *There has been no taking of the undivided 19.17-acre parcel.*

■ This court's previous decision in this matter which is now final established the City properly denied Ramona's lot split application. Accordingly, there is no discrete 1.97-acre parcel at the northwest corner of the campus. The 1.97-acre area is part of the 19.17-acre parcel and the 1.97-acre area is zoned the same as the rest of the property. The City has not treated the 1.97 acres any differently than the rest of the property.

Thus, there exists only a single undivided 19.17-acre parcel. The 19.17-acre parcel has not been taken by the City. The undivided parcel, including the baseball diamond, continues to be used for school purposes, consistent with the open space classification.

4. *There has been no taking of the 1.97-acre portion of the parcel.*

Even if the 1.97-acre portion of the parcel were viewed as a discrete area, this case does not present a situation of a zoning regulation which denies the owner any reasonable use of the land in question.

a. *No merit to Ramona's contention the City has taken 1.97 acres of the parcel by freezing it into idleness.*

■ Ramona contends the City has taken the 1.97-acre portion of the parcel by freezing it into idleness, and the City cannot defend on the theory it has permitted development in the rest of the larger parcel. The argument fails because there is only a single 19.17-acre parcel, *all* of which may be used by Ramona for, inter alia, school purposes.

The cases cited by Ramona in support of its argument are inapposite.

*Twain Harte Associates, Ltd.* v. *County of Tuolumne* (1990) 217 Cal.App.3d 71 [265 Cal.Rptr. 737], involved an 8.5-acre parcel zoned " 'light commercial.' " A shopping center complex and parking lot occupied only about 6.8 acres thereof. The remaining 1.7 acres of the parcel remained undeveloped. The county rezoned the 1.7-acre undeveloped plot from " 'light

commercial' " to " 'open space' " to ensure land use compatibility between residential and commercial land uses. (*Id.*, at pp. 77-79.)

The owners contended the downzoning of the 1.7-acre plot constituted economic deprivation so onerous as to constitute a taking of that portion of the property. (*Twain Harte Associates, Ltd., supra*, 217 Cal.App.3d at pp. 84-85.) The county argued the 1.7-acre plot must be considered within the 8.5-acre parcel for taking purposes, and the owners had suffered no substantive economic deprivation because the 8.5-acre parcel had upon it a shopping center of significant size and monetary benefit. (*Id.*, at p. 85.)

The *Twain Harte* court rejected the county's argument, explaining ". . . the law does not demand the entire 8.5-acre parcel be treated as a whole in an . . . inverse condemnation analysis. Rather, whether the ordinance 'went so far' in its economic consequences as to effect a 'taking' of the 1.7-acre undeveloped plot is an issue of fact. It entails assessment of the potential for development *of each of the differently zoned properties*, . . ." (*Twain Harte Associates, Ltd., supra*, 217 Cal.App.3d at p. 87, italics added.) Therein lies the difference with the instant case, wherein the zoning of the entire property is uniform.

Similarly, in *Aptos Seascape Corp.* v. *County of Santa Cruz* (1982) 138 Cal.App.3d 484, 490 [188 Cal.Rptr. 191], a corporation sued the county for inverse condemnation, contending that in rezoning the plaintiff's property, the county deprived it of all reasonable use of certain of its land. The plaintiff owned 110 contiguous acres, 70 of which were "beachlands" and 40 acres of which were "benchlands." The effect of the rezoning was to disallow all development on the 70-acre beachlands portion of the 110-acre parcel. (*Id.*, at pp. 490-491.) The trial court ruled, inter alia, the county had precluded all reasonable use of the beachlands and had taken the property to preserve it as open space and it entered a money judgment for the plaintiff. (*Id.*, at p. 491.)

One of the issues presented on appeal was whether the trial court had erred in considering the 70-acre property in isolation to determine whether there had been a taking, or instead, should have considered whether the zoning ordinance had deprived the owner of all reasonable use of the entire 110-acre parcel. (*Aptos Seascape Corp., supra*, 138 Cal.App.3d at p. 495.) The reviewing court observed ". . . *when governmental action has divided contiguous property under single ownership into separate zones, and has restricted development in one of those zones*, a provision allowing some transfer of development rights from the restricted property or awarding

compensating densities elsewhere may preclude a finding that an unconstitutional taking has occurred." (*Id.*, at p. 496, italics added.)

Thus, *Twain Harte* and *Aptos* plainly are factually distinguishable. In each of those cases, the governing entity created *different* zones within a single parcel and restricted development in part of the property. Here, the zoning of the entire 19.17-acre parcel is *uniform*. The City has not zoned the 1.97-acre differently from the rest of the larger parcel. The entire parcel which is zoned open space may be used, inter alia, for school purposes.

It is Ramona, *not* the City, which seeks to treat the 1.97-acre portion differently from the rest of the parcel. Thus, there is no merit to Ramona's contention the City has taken the 1.97-acre portion of the larger parcel by limiting the development potential of the 1.97 acres.

 b. *Ramona has not been denied reasonable use of the property or any portion thereof.*

■■■ Ramona also contends the 1.97-acre area has been taken because the City has compelled it to sacrifice all economically viable uses of the property. Ramona relies, inter alia, on the United States Supreme Court's recent decision in *Lucas* v. *So. Carolina Coastal Council* (1992) 505 U.S. __ [120 L.Ed.2d 798, 814, 112 S.Ct. 2886], wherein the court stated "regulations that leave the owner of land without economically beneficial or productive options for its use—typically, . . . by requiring land to be left substantially in its natural state—carry with them a heightened risk that private property is being pressed into some form of public service under the guise of mitigating serious public harm." When an owner of real property "has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle," the owner has suffered a taking and is entitled to compensation. (505 U.S. at p. __ [120 L.Ed.2d at p. 815].)[5]

■■■ However, unlike a regulation which effects a taking by prohibiting all economically beneficial uses of the land in question (see *Lucas, supra,* 505 U.S. at p. __ [120 L.Ed.2d at pp. 814-815]), the promulgation of a zoning law which results in only a diminution in the value of the affected property is not a taking. (*Euclid* v. *Ambler Co.* (1926) 272 U.S. 365, 396-397

---

[5]In *Lucas,* the owner paid $975,000 for two residential lots on which he intended to build single-family homes. The South Carolina Legislature subsequently enacted the Beachfront Management Act, which had the direct effect of barring the owner from erecting any permanent habitable structures on the two parcels. (*Lucas, supra,* 505 U.S. at p. __ [120 L.Ed.2d at p. 807].)

[71 L.Ed. 303, 314-315, 47 S.Ct. 114, 54 A.L.R. 1016]; *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 514-515, 518 [125 Cal.Rptr. 365, 542 P.2d 237].)

The denial of the highest and best use does not constitute an unconstitutional taking of property. (*Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1036 [282 Cal.Rptr. 877], cert. den. (1992) __ U.S. __ [120 L.Ed.2d 898, 112 S.Ct. 3027].) "Even where there is a very substantial diminution in the value of land, there is no taking. ([*MacLeod* v. *Santa Clara County* (9th Cir. 1984) 749 F.2d 541], 547-548, citing *Hadacheck* v. *Sebastian* (1915) 239 U.S. 394 [60 L.Ed.348, 36 S.Ct. 143]—diminution in value from $800,000 to $60,000 not a taking; *William C. Haas* v. *City & Cty. of San Francisco* (9th Cir. 1979) 605 F.2d 1117, 1120—diminution in value from $2 million to $100,000 not a taking.)" (*Long Beach Equities, Inc., supra*, 231 Cal.App.3d at p. 1036.)

Further, it is settled the preservation of some open space amidst populated areas is a legitimate exercise of the police power, intended to protect area residents from the negative effects of excessive urbanization. (*Agins* v. *Tiburon* (1980) 447 U.S. 255, 261 [65 L.Ed.2d 106, 112, 100 S.Ct. 2138].) Thus, the core issue presented by an " 'as applied' " challenge to a zoning restriction is whether the governmental exercise of its police power " 'went too far' " with respect to the specific piece of property before the court. (*Twain Harte Associates, Ltd., supra*, 217 Cal.App.3d at p. 82.)

 Here, while the City imposed certain limitations on uses of the land which limitations have resulted in a diminution of the land's value, they do not rise to the level of a taking. (*HFH, Ltd.* v. *Superior Court, supra*, 15 Cal.3d at p. 518.) Even though the 1.97-acre area cannot be utilized for multiple family dwellings, it cannot be said the land has been taken. Contrary to the often-repeated assertion in Ramona's briefs, the City has not conscripted Ramona to maintain a public park on the property.

Moreover, the City has not prohibited all reasonable use of the property. The open space zoning allows various permitted and conditionally permitted uses on the site, including, most particularly, educational institutions. (Alhambra Mun. Code, § 23.34.030, subd. (1).) Thus, if Ramona wishes to expand its classroom facilities, add science laboratories, or build a gymnasium or dormitories, it could do so on the site. Accordingly, there has been no taking of the 1.97-acre portion of the parcel.

In response, Ramona asserts the northwest corner of the campus is not essential to the school's purpose and the baseball diamond will be relocated

elsewhere. In other words, Ramona's priority is to maximize its proceeds through the sale of the 1.97-acre area for high density development. This argument is unavailing because Ramona's internal financial situation is not determinative of whether a taking has occurred.[6]

5. *Contention re spot zoning not properly before us.*

 Ramona contends the City deprived it of equal protection of the laws by discriminatory spot zoning.[7] Ramona asserts its property is an island of open space completely surrounded by property zoned for residential development and so developed.

The issue has been waived. On review of a summary judgment, ". . . the issues [are] framed by the pleadings, since it is these allegations to which the [summary judgment] motion must respond." (*Torres* v. *Reardon* (1992) 3 Cal.App.4th 831, 836 [5 Cal.Rptr.2d 52].) Here, Ramona's complaint "was devoid of allegations to the effect the [open space classification] was arbitrary, unreasonable, or discriminatory." (*Twain Harte Associates, Ltd.*, *supra*, 217 Cal.App.3d at p. 83.) Because no right to recover on the basis of spot zoning was pled in the complaint, we do not address the contention.

6. *No merit to Ramona's contention the City has violated its right to free exercise of religion.*

██ Ramona contends the City's "*de facto* land grab of the Property, directly and adversely affects Ramona Convent's ability to discharge its mission to pass on, through education, religious values to a new generation." Ramona emphasizes it "has no means other [than] proceeds [of] sale of the 1.97 acres to place itself on a financial basis that will ensure its continued operation."

The argument fails. There has been no land grab. As discussed above, there has been no taking of the 1.97 acres, which area merely is a portion of Ramona's undivided 19.17-acre parcel.

Further, the City has not interfered with Ramona's free exercise of religion. Ramona's precarious financial situation stems in part from a natural

[6]We observe that under Ramona's theory, it would be able to dismantle its property piecemeal by splitting the acreage into numerous smaller parcels, each of which would be too small to be viable as an open-space zone. Ramona then could claim inverse condemnation because the open-space zoning of the shrunken parcels would preclude any reasonable use of them.

[7]Spot zoning occurs where a small parcel is restricted and given less rights than the surrounding property, thereby creating an " 'island' " in the middle of a larger area devoted to other uses. (*Wilkins* v. *City of San Bernardino* (1946) 29 Cal.2d 332, 340 [175 P.2d 542]; *Ross* v. *City of Yorba Linda* (1991) 1 Cal.App.4th 954, 960 [2 Cal.Rptr.2d 638].)

disaster and not from any action by the City. The City has no First Amendment obligation to rezone a portion of Ramona's property in order to ensure Ramona's solvency.

7. *Liability of individual defendants not reached.*

Ramona contends the trial court erred in finding the individual defendants, members of the Alhambra City Council and the city clerk, immune from the consequences of their unconstitutional conduct.

Because there was no deprivation of Ramona's rights, it is unnecessary to discuss the issue of the individual defendants' immunity.

### DISPOSITION

The judgment is affirmed. Ramona to bear costs on appeal.

Croskey, J., and Hinz, J., concurred.

A petition for a rehearing was denied January 10, 1994, and appellant's petition for review by the Supreme Court was denied April 13, 1994.