[No. A073787. First Dist., Div. Two. Oct. 8, 1997.]

JOHN CREIGHTON et al., Plaintiffs and Appellants, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

238

**COUNSEL**

Sigman, Lewis & Feinberg, Alfred H. Sigman, Dan Feinberg, Peter W. Saltzman and Andrew Thomas Sinclair for Plaintiffs and Appellants.

O'Melveny & Myers, Linda J. Smith, Diane E. Pritchard, James E. Holst and James Nellis Odell for Defendants and Respondents.

**OPINION**

**HAERLE, Acting P. J.—**

### I. INTRODUCTION

John Creighton et al., appeal from a judgment in favor of the Board of Regents of the University of California in a class action challenging the university's voluntary early retirement incentive program on contract clause and equal protection grounds. We affirm.

## II.  Factual and Procedural Background

The University of California manages three national laboratories under contracts with the United States Department of Energy (DOE). Laboratory employees are covered by the University of California Retirement Plan (UCRP), a "defined benefit" plan funded by employer and employee contributions. The UCRP provides monthly pension benefits based primarily on retirees' final salary, age, and years of service.

In the spring of 1993, DOE advised the university to expect declining laboratory budgets resulting in the loss of about 1,500 positions. In order to minimize the number of involuntary layoffs, the university decided to offer a voluntary early retirement incentive program paid for by a surplus in the retirement fund. On May 21, 1993, while still consulting with DOE on the details, the Regents passed a resolution to amend the UCRP to authorize "VERIP-III." Under this program, an eligible laboratory employee who, between July 1 and October 1, 1993, elected to retire on November 1, 1993, would receive credit for three additional years of age and five additional years of service, as well as a lump-sum "transition assistance payment" equal to three months' covered compensation (the "3+5+3" plan). In light of a shortfall in the university's state funding, at their June 18, 1993, meeting the Regents passed a resolution amending the UCRP to offer a similar VERIP-III to campus employees.

Meanwhile, DOE was voicing objections to VERIP-III on the grounds that it might cause a major loss of key scientific personnel at the laboratories, and was more generous than similar programs at its other contractor-run facilities. After extensive negotiations, the university, concerned about maintaining its laboratory management contracts, reached an understanding with DOE. Accordingly, at their July 16, 1993, meeting, the Regents passed a resolution amending VERIP-III to reduce the years of service credit from five to three for eligible retiring laboratory employees only (the "3+3+3" plan). The university mailed VERIP-III application packets to eligible employees. Those who applied were sent election packages stating what their monthly payments would be. Those who then wished to participate submitted written election forms.

Appellants represent the class of laboratory employees who were eligible to retire under VERIP-III on May 21, 1993, continued to work through July 16, 1993, and thereafter elected to participate in the program, retiring on November 1, 1993. On April 8, 1994, they filed a second amended petition for writ of mandate, application for declaratory and injunctive relief, and complaint for damages, in which they alleged six causes of action based on

theories of impairment and breach of contract, third party beneficiary rights, breach of fiduciary duty, and equal protection. Appellants eventually dismissed their third party beneficiary claims, and the Regents' demurrer was sustained as to breach of fiduciary duty.

On October 17, 1995, the Regents filed a motion for summary judgment or summary adjudication of issues (Code Civ. Proc., § 437c). On October 31, 1995, appellants filed a motion for writ of mandate (Code Civ. Proc., § 1084 et seq.). The motions were consolidated for hearing, after which the trial court took the matter under submission. In its order after hearing, the court granted the Regents' motion for summary adjudication of appellants' contract causes of action but, finding the equal protection claim could not be summarily adjudicated, resolved that issue in the Regents' favor by denying appellants' petition for writ of mandate. On February 15, 1996, the trial court filed its judgment, and appellants filed a timely notice of appeal.

## III. DISCUSSION

### A. Contract Claims

The trial court disposed of appellants' contract claims on the Regents' motion for summary adjudication of issues. ▮ "In reviewing an order granting summary adjudication of issues, we are governed by the rules generally applicable to review of summary judgments. [Citation.]" (*Heredia v. Farmers Ins. Exchange* (1991) 228 Cal.App.3d 1345, 1353 [279 Cal.Rptr. 511].) "The standard of review in summary judgment cases is that of independent review. [Citation.]" (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1011, 1015 [50 Cal.Rptr.2d 892].) ▮ "A defendant moving for summary judgment has the burden of establishing a complete defense or negating each of the plaintiff's theories and establishing the action is without merit. [Citations.]" (*Ramona Convent of the Holy Names v. City of Alhambra* (1993) 21 Cal.App.4th 10, 19 [26 Cal.Rptr.2d 140].)

▮ In their motion for summary adjudication of issues, the Regents claimed their July 16, 1993, amendment to VERIP-III, changing the terms from 3+5+3 to 3+3+3, did not constitute impairment or breach of contract, because the 3+5+3 incentive was not a vested pension right. The trial court agreed. Appellants challenge that conclusion on appeal.

▮ "Terms and conditions relating to public employment are controlled by statute or ordinance rather than by ordinary contract standards. [Citation.]" (*Thorning v. Hollister School Dist.* (1992) 11 Cal.App.4th 1598, 1605

[15 Cal.Rptr.2d 91].) However, a statutory grant to public employees of pension rights in return for services has long been held to imply a contractual obligation. (*California Teachers Assn.* v. *Cory* (1984) 155 Cal.App.3d 494, 505-506 [202 Cal.Rptr. 611].) "A public employee's pension constitutes an element of compensation, and a vested contractual right to pension benefits accrues upon acceptance of employment. Such a pension right may not be destroyed, once vested, without impairing a contractual obligation of the employing public entity." (*Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 863 [148 Cal.Rptr. 158, 582 P.2d 614] (*Betts*), citing *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 852-853 [179 P.2d 799] (*Kern*).) An employee's contractual pension expectations are measured not only by benefits in effect when employment commences, but also by those conferred during the employee's subsequent tenure. (*Betts, supra,* 21 Cal.3d at p. 866.) This principle has been applied to disability as well as service retirement benefits (*Frank* v. *Board of Administration* (1976) 56 Cal.App.3d 236, 243 [128 Cal.Rptr. 378]), to postretirement health benefits (*Thorning* v. *Hollister School Dist., supra,* 11 Cal.App.4th at p. 1602), and even to certain nonpension benefits (*California League of City Employee Associations* v. *Palos Verdes Library Dist.* (1978) 87 Cal.App.3d 135, 137, 139-140 [150 Cal.Rptr. 739] [longevity salary increase, extra vacation, paid sabbatical]).

■ The trial court found, however, that *Kern* and its progeny did not govern this case, because VERIP-III "is not a retirement benefit for which employees accept lower compensation now with the expectation of future benefits," but rather, "more in the nature of a current gift which is offered to induce foreshortened service." Appellants note that the trial court's characterization seems to run afoul of the prohibition against making gifts of public funds (Cal. Const., art. XVI, § 6; *Kern, supra,* 29 Cal.2d at p. 851). ■ We are not bound, however, by the trial court's stated reasons, since we review the ruling, not its rationale. (*Ramona Convent of the Holy Names* v. *City of Alhambra, supra,* 21 Cal.App.4th at p. 19.) ■ That VERIP-III is not a "gift" does not mean it is a vested pension right.

The Regents emphasize the trial court's finding that VERIP-III was "offered to induce foreshortened service," whereas pension benefits generally consist of compensation " 'withheld to induce long-continued and faithful services.' [Citation.]" (*Kern, supra,* 29 Cal.2d at p. 852.) Appellants argue that if this distinction were determinative—if the characterization of rights or benefits were entirely dependent upon the employer's stated reason for offering them—then "employee handbooks, personnel manuals, and policies relating to retirement would soon be filled with such reasons," defeating the rule of *Kern* and its progeny. But even if, as appellants insist, VERIP-III *is* a retirement benefit, it is different *in kind* from the benefits

governed by the *Kern-Betts* line of cases, none of which concerned a one-time, special, elective incentive offered to eligible employees during a short, specified "window" period, in response to specific financial exigencies.[1] In recognition of this difference, both versions of VERIP-III expressly provide: "Notwithstanding anything contained herein to the contrary, the crediting of additional age [credit] and Service Credit under Section 5 and/or payments associated with this contingent program shall not be a vested or accrued Plan benefit." (Par. 9(c), bracketed word added to July 16 version.)

Appellants maintain that paragraph 9(c) means that the *only* two circumstances which do *not* trigger vesting of VERIP-III are (1) the crediting of additional age and service credits, and (2) the payment of enhanced benefits. Thus, they argue, paragraph 9(c) does not preclude their claim that their performance of services after May 21 gave rise to a vested contractual right. This interpretation is, in the Regents' words, "strange and incomprehensible."

As appellants remind us, ambiguous language in a retirement plan is subject to judicial construction (*Anderson* v. *City of Los Angeles* (1973) 30 Cal.App.3d 219, 224 [106 Cal.Rptr. 299]), and pension provisions should be liberally construed to favor the applicant (*Flint* v. *Sacramento County Employees' Retirement Assn.* (1985) 164 Cal.App.3d 659, 666 [210 Cal.Rptr. 439]). A provision is, however, ambiguous only when it is susceptible of two or more reasonable constructions. (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 271 [203 Cal.Rptr. 672].) When, on the other hand, the language is clear and unambiguous, ". . . there is no need for construction and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) The latter principle applies here. We have no difficulty in concluding that the language in paragraph 9(c) clearly and unambiguously means that VERIP-III creates no vested right to either its additional age and service credits or the resulting enhanced pension payments.

Appellants contend that at the demurrer hearing the Regents "conceded that the University could not seriously endorse the literal language of section 9(c)." At the hearing in question, appellants argued that, if the enhanced benefits conferred by VERIP-III were not "vested," an employee might retire and collect them for a time, only to have them canceled some years down the road. The court then asked the Regents at what stage the benefits would

---

[1] The preamble to the program defines it in words which emphasize its contingent, short-term nature: "A special contingent financial incentive available for a fixed time period to effect substantial payroll savings in light of severe and cumulative budgetary shortfalls to a select targeted group of employee-Plan Members."

"become vested" to the point where this could not happen. The Regents replied that, once an employee retires and starts receiving payment in conformance with the terms of VERIP-III, "we would concede this is a vested benefit." This "concession" is quite the opposite of appellants' reading of paragraph 9(c): The actual receipt of "payments associated with" the program, i.e., enhanced benefits based on additional age and service credits, is the only event which *does* trigger "vesting," in the sense that it gives rise to a right to continued enhanced payments.[2]

Thus, the real meaning of the Regents' "concession" is this: VERIP-III is not a pension benefit which immediately vests by implication as in the *Kern-Betts* line of cases. Rather, it is a limited offer of enhanced benefits which, upon an eligible employee's timely acceptance (election to participate, formalized between July 1 and October 1, 1993), and with consideration (retirement on November 1, 1993), creates a separate binding contract. Since there was no acceptance or consideration in response to the Regents' May 21 offer of a 3+5+3 plan by appellants, no binding contract was established. It follows that the withdrawal of that offer and substitution of the 3+3+3 plan on July 16 did not constitute impairment or breach of contract.

We need not decide whether, as the Regents contend, the disclaimer in paragraph 9(c) is itself determinative on the grounds that ". . . there can be no implied contractual term completely at variance with an express term of a contract" (*Wagner* v. *Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1393 [265 Cal.Rptr. 412]). Nor are we faced with the broader question of whether such a disclaimer would suffice to divest employees of the kind of pension rights at issue in *Kern* and *Betts*. We hold only that a one-time limited offer of special incentives for early retirement, accompanied by such an express disclaimer, is not governed by the *Kern-Betts* rule, and can be withdrawn or altered before acceptance without violating a vested contractual right.[3]

## B.  *Equal Protection*

■     Appellants claimed below that the July 16 amendment to VERIP-III, reducing service credits for laboratory but not campus employees, violated their constitutional right to equal protection of the laws (Cal. Const.,

---

[2]At oral argument, appellants' counsel contended the option became "vested" immediately upon any claimant continuing in employment for even one day after the program's adoption.

[3]In light of this conclusion, we need not reach appellants' contention that the Regents' July 16 resolution was an invalid amendment to VERIP-III under both case law governing modification of vested pension rights (see *Claypool* v. *Wilson* (1992) 4 Cal.App.4th 646, 665-666 [6 Cal.Rptr.2d 77], and cases cited therein) and the UCRP revision provision (§ 11.14).

art. I, § 7, subd. (a)). Equal protection requires "that persons *similarly situated* with respect to the legitimate purpose of the law receive like treatment. [Citations.]" (*College Area Renters & Landlord Assn.* v. *City of San Diego* (1996) 43 Cal.App.4th 677, 686 [43 Cal.App.4th 677, 50 Cal.Rptr.2d 515], italics in original.) If a law discriminates between similarly situated persons, "the classification (in ordinary cases) must bear a rational relationship to a legitimate state purpose . . . . [Citations.]" (*Id.* at p. 686.)

The trial court found that whether laboratory and campus employees were similarly situated, and whether the Regents had a rational basis for distinguishing between the two groups, were questions of fact which could not be summarily adjudicated. It therefore considered appellants' equal protection claim as part of their writ petition. It denied that petition after finding that substantial evidence supported the determination that the two groups of university employees were not similarly situated "and in any event, there is a rational basis for the differentiation in benefits." Based on these statements, the Regents contend the substantial evidence standard of review governs this claim on appeal. Elsewhere, however, they concede there was no real dispute as to any of the relevant facts, but simply a disagreement as to the legal effect of those facts. ■ "When the facts before an administrative agency are uncontradicted, the trial court's determination of their legal effect involves solely a question of law. [Citation.]" (*Swaby* v. *Unemployment Ins. Appeals Bd.* (1978) 85 Cal.App.3d 264, 269 [149 Cal.Rptr. 336].) "On questions of law arising in mandate proceedings, we exercise independent judgment. [Citation.]" (*Bunnett* v. *Regents of University of California* (1995) 35 Cal.App.4th 843, 849 [41 Cal.Rptr.2d 567].)

■ Appellants contend they were treated differently from "similarly situated Plan [UCRP] participants (i.e., non-laboratory University employees eligible to participate in VERIP),"[4] and argue that the Regents' stated reasons for the differential treatment were not rationally related to the purpose of the UCRP, i.e., to provide retirement income to eligible university employees.

There are several fallacies in this argument. To begin with, the "law" at issue here is not the UCRP, but VERIP-III, the purpose of which is to induce voluntary early retirement in lieu of involuntary layoffs which would otherwise be necessary. With respect to *this* legitimate purpose, appellants' assumption that eligible laboratory and nonlaboratory university employees

---

[4]Certain nonlaboratory university employees, such as high-level administrators, were excluded altogether from VERIP-III, and members of the U.C. Berkeley faculty were offered a 2+6+3 rather than a 3+5+3 plan.

were similarly situated is simply not true. The two groups were engaged in different missions, at different locations, with different funding sources and constraints, and different staffing needs. Laboratory employees, engaged in scientific research, were subject to cutbacks in federal spending at the end of the cold war, which brought a change in focus from nuclear defense and weapons programs to such fields as environmental restoration and waste management. Campus employees, engaged in higher education, were threatened with cutbacks resulting from repeated shortfalls in the state budget. Appellants do not dispute the fact that, "[t]he workforce reduction and restructuring needs differed between the national laboratories and the University's campuses." This concession leads to the inescapable conclusion that the two groups were not similarly situated with respect to the legitimate purpose of VERIP-III, and defeats appellants' equal protection claim.

## IV. DISPOSITION

The judgment is affirmed.

Lambden, J., and Ruvolo, J., concurred.

A petition for a rehearing was denied November 4, 1997, and appellants' petition for review by the Supreme court was denied January 14, 1998.