[No. B022314. Second Dist., Div. Four. May 19, 1987.]

W. KENNETH ROSS et al., Plaintiffs and Appellants, v.
CITY OF ROLLING HILLS ESTATES et al., Defendants and
Respondents.

**COUNSEL**

Weisman, Butler & Watson, Mark L. Weisman and Laurie J. Butler for Plaintiffs and Appellants.

Richard R. Terzian, City Attorney, Adams, Duque & Hazeltine and Cristina L. Sierra for Defendants and Respondents.

OPINION

COLE, J.*—Appellants W. Kenneth Ross and Carole A. Ross appeal from a judgment entered in favor of respondents the City of Rolling Hills Estates (the City), the Planning Commission of the City of Rolling Hills Estates (the Commission), and the City Council of the City of Rolling Hills Estates (the Council) denying appellants' petition for writ of mandate. The mandate was sought to compel respondents to approve plans presented by appellants to expand and alter their home, located in the City. The writ also sought to compel the issuance of a variance to zoning ordinances concerning lot requirements. Principally at issue is a view protection ordinance of the City. We reject appellants' contentions that the ordinance is unconstitutionally vague and that the City abused its discretion in denying them a building permit[1] and a variance. Accordingly, we affirm.

BACKGROUND

On December 21, 1984, appellants filed an application for a variance to permit a two-story addition to their home which would encroach into a code-required 15-foot street-side yard setback and to allow the proposed lot coverage to exceed the code-permitted 30 percent limit. The Commission denied the zone variance request on May 20, 1985. No appeal was taken from this decision.

On June 6, 1985, appellants submitted revised plans for the addition to their residence. The revised plans eliminated the zoning violations and the need for any variance. Because the views of other property owners would be impaired to some degree, those owners were notified by the City of their right to file objections and to appear before the Commission. They filed objections to clearance of the revised plans. The Commission conducted a public hearing on August 19, 1985. It found that the proposed addition did not conform to the objectives of the view protection ordinance and denied approval of the plans.

Appellants appealed the Commission's decision to the Council. The Council held a public hearing on October 10, 1985, and affirmed the decision of the Commission.

---

*Assigned by the Chairperson of the Judicial Council.

[1]The City's approval of plans was a precondition to the issuance of a building permit. We refer to the denial of approval of the plans as denial of a building permit, which was its practical effect.

## THE VIEW PROTECTION ORDINANCE

 Appellants' challenge to the ordinance asserts that due process is denied them because the ordinance language is unconstitutionally vague. This argument is without merit. Appellants base the argument on semantic challenges to the ordinance's stated purposes and guidelines. The full text of the ordinance is set forth in the margin.[2] Thus, they argue that words such

---

[2]1950. PURPOSES. The hillsides of the City constitute a limited natural resource in their scenic value to all residents of and visitors to the City and their potential for vista points and view lots. It is found that the public health, safety and welfare require prevention of needless destruction and impairment of views and promotion of the optimum utilization and discouragement of the blockage and misuse of such sites and view lots. The purpose of this ordinance is to promote the health, safety and general welfare of the public through:

"(a) The protection, enhancement, perpetuation and use of sites and view lots that offer views to the residents because of the unique topographical features which the Palos Verdes Peninsula offers, or which provide unique and irreplaceable assets to the City and its neighboring communities or which provide for this and future generations examples of the unique physical surroundings which are characteristic of the City.

"(b) The maintenance of settings which provide the amenity of a view.

"(c) The establishment of a process of design review by which the City may render its assistance toward the objective that views enjoyed by residents of the City will not be significantly obstructed.

"1951. EVALUATION AND REVIEW. To protect the visual quality of highly scenic areas and maintain the rural character of the City, new development should not degrade highly scenic natural historical or open areas and shall be visually subordinate to the scenic quality of these areas.

"New development within the various view sheds contained in the City that would have a significant visual impact to those living adjacent to the development, shall be subject to design review. This review shall ensure that development and its cumulative impact is consistent with the previously mentioned standards.

"The design procedures and standards employed in new developments, alterations and additions to existing structures and lots should include appropriate measures that are consistent with appearance and design goals of the View Protection Ordinance. Development proposals should be coordinated in order to:

"(a) Maximize open space preservation.

"(b) Protect view corridors, natural vegetation, land forms, and other features.

"(c) Minimize the appearance of visually intrusive structures.

"(d) Prevent the obstruction of property owners' views by requiring appropriate construction of new structures or additions to existing buildings or adjacent parcels.

"(e) Assess the potential view loss from public areas of any proposed major structures as well as alterations and additions to existing structures.

"(f) Determine whether other suitable design options are available to the property owner in order that view obstructions may be eliminated or lessened in severity.

"1952. CLEARANCE PROCEDURES. Should it appear that a potential view impairment may result from a proposed development, addition or alteration, the site shall be subjected to a View Preservation Site inspection. A fee shall be charged for such inspection as the City Council shall fix by resolution.

"1953. INSPECTION. Upon such inspection, should the City zone clearance official determine that the proposed development addition or alteration will impair a view site, the matter shall be referred for hearing and review by the Planning Commission pursuant to Sections 1954 and 1955 below.

"1954. ADMINISTRATION AND REVIEW. It shall be the duty of the Planning Commission to administer the provisions of the View Protection Ordinance. Review of any site for such purposes shall be initiated by the City pursuant to a View Preservation Site Inspection or otherwise, or by any person aggrieved.

"1955. POWERS AND DUTIES OF PLANNING COMMISSION. The Planning Commission shall hold a public meeting when complaint opposed to any pending development addition or alteration

as "needless," "discourage," "view," "impairment" and "significantly obstructed," appearing in various portions of the text, do not provide sufficient guidance and are "unintelligible concepts."

■ The tests which apply when a statute or ordinance is challenged for vagueness are set forth in *Hand* v. *Board of Examiners* (1977) 66 Cal.App.3d 605, 620-621 [136 Cal.Rptr. 187]: "In *McMurtry* v. *State Board of Medical Examiners* (1960) 180 Cal.App.2d 760, 766-767 [4 Cal.Rptr. 910], the court stated various tests for vagueness: 'It is well settled that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." [Citations.] This principle applies not only to statutes of a penal nature but also to those prescribing a standard of conduct which is the subject of administrative regulation. [Citations.] *The language used in such legislation "must be definite enough to provide a standard of conduct" for those whose activities are prescribed as well as a standard by which the agencies called upon to apply it can ascertain compliance therewith.* [Citation.] Approved rules by which to judge the sufficiency of a statute in the premises have been applied in numerous decisions, i.e., the words used in the statute should be "well enough known to enable those persons within its purview to understand and correctly apply them." [Citation]; words of long usage, or which have an established or ascertainable meaning in the profession or industry involved, or those which have been given a definite and restrictive interpretation by the courts, or the meaning of which may be determined from a fund of human knowledge and experience, will meet the test of certainty. [Citations]; if the words used may be made reasonably certain by reference to the common law, to the legislative history of the statute involved, or to the purpose of that statute, the legislation will be sustained [citations]; and a standard fixed by language which is reasonably certain, judged by the foregoing rules, meets the test of due process "notwithstanding an element of degree in the definition as to which estimates might differ. [Citations.]" ' (Italics added.)"

has been filed by a person aggrieved or referred by the City zone clearance official. In connection with the foregoing, the Planning Commission:

(a) Shall hear and review such complaints or referrals regarding the proposed construction, alteration, or additions.

"(b) May request, following a public meeting, that proposed action on a particular site or plans to make any additions to existing structures or new accessory structures on the lot in question will meet the mitigation measures of the View Protection Ordinance as outlined by the Planning Commission.

"(c) Coordinate and conciliate to the maximum extent possible the resolution of disputes among property owners concerning view obstructions.

"1956. APPEAL. Any person aggrieved may appeal the Planning Commission decision to the City Council within twenty (20) days after determination of required view protection mitigation measures."

■ Applying these tests we do not find the ordinance to be too vague. A reasonably certain standard in light of the need for view protection can be determined. Indeed, we find it ironic that appellants, arguing in their reply brief that their house is located in a highly built-up residential area and not an untouched scenic wilderness, choose to argue that this case involves only "a normal residential addition in an area where there is a scenic view already *significantly obstructed* . . . ." (Italics added.) That very underlined phrase, readily understood, is one they themselves challenge as too vague to be enforced.

While not itself a zoning ordinance, the view protection ordinance is closely related. ■ "[A] substantial amount of vagueness is permitted in California zoning ordinances" in order to permit delegation of broad discretionary power to administrative bodies. (*Novi* v. *City of Pacifica* (1985) 169 Cal.App.3d 678, 682 [215 Cal.Rptr. 439]; and see *Piano* v. *State of California* ex rel. *New Motor Vehicle Bd.* (1980) 103 Cal.App.3d 412, 418 [163 Cal. Rptr. 41].) The ordinance at issue passes muster.

### DENIAL OF BUILDING PERMIT

Appellants' contention that respondents abused their discretion in denying appellants a building permit is based on three grounds: (1) that the Council based its decision on zoning criteria involving aesthetics which had not yet been adopted, rather than on the criteria established by the view protection ordinance; (2) that it failed to make findings sufficient to its decision; and (3) that its findings are not supported by the evidence.

■ The record here does not reflect that the City relied on criteria contained in future zoning regulations to deny appellants' proposal. The need to protect the rural character of the area, which is a stated goal of the view protection ordinance, was considered by the council members. While the mayor stated that he hoped that future residential zoning would address aesthetics, he also said that he was not relying on aesthetics in voting to affirm.[3] This case is thus distinguishable from *Gabric* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 183 [140 Cal.Rptr. 619].

■ By affirming the Commission's decision, the Council in effect adopted its findings. (*Carmel Valley View, Ltd.* v. *Board of Supervisors* (1976) 58 Cal.App.3d 817, 823 [130 Cal.Rptr. 249].) The testimony taken at the

---

[3]The mayor stated: "[W]e hope that when we do our residential zoning . . . we get in the[re] some statement . . . [that] any new homes or any . . . additions to existing structures should be in keeping with existing structures . . . . And while I don't want to get involved with the aesthetics at the moment, I certainly can't believe that this is in keeping with the size.

Council's public hearing was substantially the same as the evidence before the Commission, and merely reinforced the Commission's decision.

The Commission found that the proposal would have an adverse impact on existing views and that appellants had failed to provide design alterations to minimize the view impact of their proposal.[4] Those findings are sufficient to apprise the parties and the court of the basis for the City Council's action. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514 [113 Cal.Rptr. 836, 522 P.2d 12].)

The trial court apparently determined, as we have done, that the Council in effect adopted the Commission's findings regarding impact on existing views and failure to mitigate that impact.

█ Appellants' contention that the findings are not supported by the evidence also lacks merit. In reviewing the administrative decision, the trial court properly applied the substantial evidence standard, resolving all reasonable doubts in favor of the administrative decision. (Code Civ. Proc., § 1094.5, subd. (c); *Topanga Assn. For a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 514.) █ The appellate court reviews the evidence by the same standard appropriate in the trial court. (*Schmitt* v. *City of Rialto* (1985) 164 Cal.App.3d 494, 501 [210 Cal.Rptr. 788].)

█ The record discloses that the Council had before it appellants' proposal, a staff recommendation that mitigating factors be incorporated into the design from the City's planning director, graphs and photographs indicating the view of city lights from the impacted properties and the extent that the proposal would affect the view, and the testimony of Stan Crawford and Margaret Larson, who testified that their views from their residences would be affected by the proposed addition. That evidence supports findings of significant view impairment and of failure to mitigate the impact on existing views.

---

[4]The minutes of the Commission state: "After further discussion, it was the consensus of the COMMISSION *that the ridgeline height of the addition and the impact on existing views was of major concern.* COMMISSIONER GIULIANO stated that both sides of this issue should compromise and try to solve the problems at hand. COMMISSIONER SERVIS added that Mr. Ross' failure to provide design alterations to this proposal does not meet with the objective of the view preservation ordinance. There being no further testimony, COMMISSIONER SERVIS moved, seconded by COMMISSIONER RUTKOSKY THAT COMMISSION FOUND THE PROPOSED TWO STORY ADDITION AT 4667 ROLLANDO DRIVE DOES NOT CONFORM TO THE OBJECTIVES OR THE VIEW PROTECTION ORDINANCE AND BE DENIED." (Italics added.)

DENIAL OF VARIANCE

■ We do not consider the merits of appellants' contention that the City abused its discretion in denying them a variance, because the issue is not properly preserved. It will be recalled that the Commission initially denied appellants' request for a variance. That denial was appealable to the Council under section 1898, subdivision (i)(1) of the City's municipal code.[5] No such appeal was taken. Therefore, appellants failed to exhaust their administrative remedies. (*Pan Pacific Properties, Inc.* v. *County of Santa Cruz* (1978) 81 Cal.App.3d 244, 249 [146 Cal.Rptr. 428]; *Roth* v. *City of Los Angeles* (1975) 53 Cal.App.3d 679, 686, 687 [126 Cal.Rptr. 163].) When the matter from which an appeal *was* taken was before the Commission later no question of a variance was involved at all.

Since the variance ordinance (see *ante,* fn. 5) allows the Council to "cause any decision of the Planning Commission to be appealed" and since the ordinance also provides in the first sentence of section 1898 that the Council may under certain circumstances initiate proceedings for consideration of the granting of a variance, appellants naturally argue that one or the other of these provisions should be invoked to save this appeal. The fact is, however, that the Council did not cause the Commissions' decision to be appealed, nor did it initiate proceedings for the grant of a variance. The transcript of the proceedings before the Council has some language in it concerning appellants' swimming pool and deck, which were involved in the variance question. Toward the end of the hearing a Council member stated that view preservation was an important cornerstone "of our philosophy all along and that's why and therefore I move we deny it until such time as an amicable arrangement be agreed upon by the neighbors and the owner." The three other councilmen, including the mayor, further discussed the matter, including both the swimming pool and the view, and then the original councilman said "I would like to move that we uphold the Planning Commission's denial of the variance." In the context of the entire meeting and of the administrative record, it is clear that he merely misspoke himself. There had been no appealed denial of the variance request. What really occurred is reflected in the Council's minutes which reflect that the Council upheld the Commission's denial regarding the proposed two-story addition to appellants' house. No issue of a variance is properly before us.

---

[5]Section 1898, subdivision (i)(1) provides: "The decision of the Planning Commission shall be final unless an appeal therefrom is taken to the Council, as provided for in this paragraph. Such decision shall not become effective for twenty (20) days from the date that the written decision has been made and notice thereof mailed to the applicant by registered mail, during which time written appeal therefrom may be taken to the City Council by the applicant or any other person aggrieved by such decision. The City Council may, upon its own motion, cause any decision of the Planning Commission to be appealed."

## Disposition

The judgment is affirmed. Respondents to recover their costs on appeal.

Kingsley, Acting P. J., and McClosky, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 29, 1987.