[No. B138366 Second Dist., Div. Four. Jan. 3, 2001.]

JON ECHEVARRIETA, Plaintiff and Appellant, v.
CITY OF RANCHO PALOS VERDES et al., Defendants and
Respondents.

**COUNSEL**

Sullivan, Workman & Dee and Robert Hampton Rogers for Plaintiff and Appellant.

Carol W. Lynch, City Attorney; Richards, Watson & Gershon, T. Peter Pierce and Gregory M. Kunert for Defendants and Respondents.

## OPINION

**HASTINGS, J.**—Jon Echevarrieta (appellant) appeals from a judgment entered in favor of respondents the City of Rancho Palos Verdes (the City) and the City of Rancho Palos Verdes City Council (the City Council) after the trial court denied appellant's petition for writ of mandate. At issue is a "view protection" ordinance of the City. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

*The Ordinance*

Voters in the City approved Proposition M on November 7, 1989. It was codified in section 17.02.040 of the Rancho Palos Verdes Municipal Code (hereinafter referred to as the Ordinance), and was most recently amended in January 1997.

In pertinent part, the Ordinance prohibits residents of the City from significantly impairing a view by permitting foliage to grow in excess of certain height limitations. If foliage in existence already exceeds those height limitations, the person whose view is impaired must first attempt to informally resolve the matter with the person who owns the foliage, and if that fails, may apply for a "view restoration permit." Hearings on the application for the permit are conducted by a view restoration commission (VRC), a committee of seven members appointed by the City Council. The VRC may grant the permit only if certain specified findings are made. If the VRC orders any foliage trimmed or removed, or replacement foliage is ordered planted, the costs are to be borne by the permit applicant. Any interested party may appeal the VRC's decision to the City Council.

*The Application Process*

Since 1966, Norbert Keilbach has lived on Greve Drive in the City. His home faces south towards the Pacific Ocean and Catalina Island. Appellant lives on Ganado Drive, on a slope directly below Keilbach's home. Appellant has several trees which are near the border of his property and Keilbach's, which purportedly block Keilbach's view of the ocean and Catalina

Island.[1] Appellant purchased his property in 1964. The trees did not exist prior to the establishment of either Keilbach's or appellant's lots.

In February 1997, Keilbach filed an application with the City in order to compel appellant to trim trees that interfered with his view.

On May 1, 1997, a public hearing was held in connection with the view restoration application. Both appellant and Keilbach appeared. At the conclusion of the hearing, the VRC adopted resolution No. 97-5, requiring that appellant remove the three pine trees and trim the tops of five other trees, at the expense of the applicant, Keilbach.

On May 16, 1997, appellant appealed the VRC's decision to the City Council. The City Council heard the appeal at its public meeting on July 1, 1997, and remanded the matter to the VRC for further consideration of the effect that trimming the trees would have on appellant's privacy.

The VRC held another public hearing on the application on October 2, 1997. At the conclusion of this hearing, the VRC ordered its staff to prepare for adoption at the next meeting a resolution requiring appellant to trim his trees.

On November 6, 1997, the VRC approved resolution No. 97-22. This resolution required appellant to trim eight of his trees but also required Keilbach to plant a barrier of no more than 20 to 25 low-growing shrubs between his property and appellant's to mitigate appellant's privacy concerns.

Appellant appealed this decision to the City Council. On March 17, 1998, the City Council heard the appeal during its public meeting.

On April 7, 1998, the City Council adopted resolution No. 98-21, affirming the VRC's approval of the view restoration permit application and requiring appellant to trim eight of his trees. Appellant then filed this lawsuit in superior court.

*Proceedings in Superior Court*

Appellant filed his "Petition for writ of mandate; complaint for declaratory relief, taking[,] spot zoning and attorney's fees" on June 17, 1998. In his

---

[1]There are 8 trees which are the subject of the dispute: 2 pine trees which measure approximately 40 feet, 1 pine tree which measures approximately 60 feet, 1 pine tree which measures approximately 20 feet, 1 ash tree measuring approximately 40 feet, 1 olive tree which measures 40 to 50 feet, 1 ornamental plum tree which measures 20 feet and 1 scrub oak tree which measures 40 to 50 feet.

complaint, he alleged that the City and the City Council abused their discretion in affirming the decision of the VRC to issue the view restoration permit, that the City and the City Council failed to grant him a fair trial, that the affirmance of the approval of the view restoration permit constituted a taking without just compensation in violation of the Fifth Amendment, and that "[b]y its enactment of the view restoration ordinance, the City has actively engaged in a species of illegal spot zoning," that is, the "unreasonable, arbitrary and discriminatory" classification of property by the enactment of unreasonable and arbitrary regulations pertaining to certain uses or classifications of property. He sought declaratory relief on two grounds: (1) that the ordinance is unconstitutional because it conflicts with state easement law and violates individual property rights and (2) that the view blockage cannot be declared a public nuisance. He also sought an award of attorney fees.

The matter came on for trial on May 4, 1999. Appellant failed to appear and the court ordered the matter dismissed. Appellant's subsequent motion to set aside the dismissal was granted and the matter was reset for trial on August 30, 1999. The matter was ultimately submitted on October 12, 1999, and on November 19, 1999, the trial court denied the petition. It ruled, in pertinent part, "The view restoration ordinance is a valid exercise of the city's police power and is not preempted by state law. [¶] In light of the whole record, there is substantial evidence which supports the findings contained in Resolution 98-21 and the findings that support the City Council's decision. [¶] Uncontradicted evidence in the record show[s] that the plaintiff had reasonable notice of the City Council's public hearings regarding his property and was given reasonable opportunity to be heard. Plaintiff's due process rights were not violated. [¶] [*Kucera v. Lizza* (1997) 59 Cal.App.4th 1141 [69 Cal.Rptr.2d 582]]." Appellant filed a notice of appeal on January 5, 2000.

On March 3, 2000, the City obtained from the superior court a warrant authorizing entry upon appellant's property "for the sole and exclusive purposes of trimming, culling, and lacing trees and foliage." On March 10, 2000, appellant obtained a 90-day stay of execution upon the warrant. Appellant filed a petition for writ of supersedeas on June 8, 2000. We denied that petition on June 9, 2000.

## DISCUSSION

On appeal, appellant makes the following contentions: (1) the trial court erred in relying upon *Kucera v. Lizza, supra*, 59 Cal.App.4th 1141; (2) the

ordinance violates the takings clause; (3) retroactive application of the ordinance deprives him of due process; (4) the ordinance is deceptive and uncertain; (5) as applied, the ordinance impermissibly expands the City's police power. We first address issues (1) and (5).

### 1. *Kucera v. Lizza and the City's Police Power*

In *Kucera v. Lizza, supra,* 59 Cal.App.4th 1141, the Court of Appeal considered the validity of an ordinance of the Town of Tiburon similar to the ordinance presented here. The stated purpose of the Tiburon ordinance was to establish "the right of persons to preserve views or sunlight which existed at any time since they purchased or occupied a property from unreasonable obstruction by the growth of trees" and to establish a process to achieve restoration of views and sunlight. (Tiburon Mun. Code, former §§ 15-1.A & 15-1.B.) In accord with the provisions of the ordinance, the Kuceras petitioned for informal dispute resolution with respect to trees located on the downhill lot across the street, on property owned by Lizza. The Kuceras claimed the trees obstructed their views of the San Francisco Bay and the Marin County mainland. Lizza, refused to participate in the process. The Kuceras filed a complaint in superior court seeking to compel restoration of their views and for abatement of a public nuisance. The trial court entered judgment in favor of Lizza concluding that the ordinance was unconstitutional and void because it was preempted by state law and was an arbitrary and unreasonable exercise of the police power.

The Court of Appeal reversed: " 'It is well settled that the state may legitimately exercise its police powers to advance aesthetic values. . . . "The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary." ' [Citations.] . . . [¶] . . . [¶] We hold the Tiburon ordinance is directed toward a valid police power goal—to preserve views and sunlight. Tiburon's choice of regulating obstructing trees and tree growth obviously bears a reasonable relationship to the achievement of those goals. [Citation.]" (*Kucera v. Lizza, supra,* 59 Cal.App.4th at pp. 1148-1149.)

■ Here, appellant contends that the Ordinance does not state a valid purpose because it states only that "the peace, health, safety and welfare of the community will be served by the adoption of this section." We disagree.

The ballot measure which was approved by the voters states the purposes of the Ordinance as follows: "The hillsides of the City constitute a limited natural resource in their scenic value to all residents of and visitors to the City. The hillsides provide potential vista points and view lots. The City's

General Plan recognizes these natural resources and calls for their protection. The public health, safety and welfare of the City require prevention of needless destruction and impairment of these limited vista points and view lots. . . . [¶] Specifically, this Ordinance: [¶] 1. Protects, enhances and perpetuates views available to property owners and visitors because of the unique topographical features of the Palos Verdes Peninsula. These views provide unique and irreplaceable assets to the City and its neighboring communities. . . . [¶] 2. Defines and protects finite visual resources by establishing limits which construction and plant growth can attain before encroaching onto a view. [¶] 3. Insures that the development of each parcel of land or additions to residences or structures occur in a manner which is harmonious and maintains neighborhood compatibility and the character of contiguous sub-community development as defined in the General Plan." These purposes were reprinted in the View Restoration Permit Guidelines and Procedures issued by the City.

Enacting the Ordinance for these purposes is a clearly a legitimate exercise of the city's traditional police power. (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 886 [50 Cal.Rptr.2d 242, 911 P.2d 429]; *Kucera v. Lizza, supra,* 59 Cal.App.4th at p. 1149.) To the extent that the trial court cited *Kucera* for this proposition, it did not err.

### 2. The Takings Issue

We agree that the *Kucera* case is not dispositive of appellant's takings claim. The opinion specifically remanded the matter for further proceedings on this issue: "The takings authorities cited by the parties are, of course, not directly pertinent. This is a facial challenge and, while it is hard to imagine on this record how compliance with the ordinance and resultant tree trimming might result in an unconstitutional taking, any such argument will have to await a remand and further proceedings." (*Kucera v. Lizza, supra,* 59 Cal.App.4th at p. 1154.) ■ Here, appellant contends that the ordinance is invalid "as applied," raising the taking issue.

■ The takings clause of the Fifth Amendment to the federal Constitution provides "[N]or shall private property be taken for public use, without just compensation." "The aim of the Clause is to prevent the government 'from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' [(*Armstrong* v. *United States* [(1960)] 364 U.S. 40, 49 [80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554]).]" (*Eastern Enterprises v. Apfel* (1998) 524 U.S. 498, 522 [118 S.Ct. 2131, 2146, 141 L.Ed.2d 451].) Similarly, the California Constitution at article I,

section 19, provides that "[p]rivate property may be taken or damaged for public use only when just compensation . . . has first been paid . . . ."

▮ A party challenging a governmental action as an unconstitutional taking bears a substantial burden. (*Eastern Enterprises v. Apfel, supra,* 524 U.S. at p. 523 [118 S.Ct. at pp. 2146-2147].) Not every destruction or injury to property by the government has been held to be a taking. (*Armstrong v. United States, supra,* 364 U.S. at p. 48 [80 S.Ct. at pp. 1568-1569].) The process for evaluating the constitutionality of a governmental action involves an examination of its "justice and fairness," for which there is no set formula, and the inquiry is "essentially ad hoc and fact intensive." (*Eastern Enterprises, supra,* at p. 523 [118 S.Ct. at p. 2146].) Several factors which have been held to be particularly significant are: (1) the economic impact of the regulation; (2) its interference with reasonable investment backed expectations; and (3) the character of the governmental action. (*Eastern Enterprises, supra,* at pp. 523-524 [118 S.Ct. at p. 2146].)

There are two types of regulatory action which have been adjudicated to be "per se" takings without the necessity of weighing the public interest advanced in support of the restraint. Those are: (1) where the property owner has suffered a physical invasion of his property and (2) where the regulation denies all economically beneficial or productive use of land. (*Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1015 [112 S.Ct. 2886, 2893, 120 L.Ed.2d 798].)

▮ Contrary to appellant's arguments, the Ordinance does not itself compel a physical invasion of appellant's property. Rather, it is appellant's refusal to comply with resolution No. 98-21, after ample notice and opportunity to correct, that has occasioned the threat of the City's entry onto the property. It does not therefore, rise to the level of a physical invasion. (*Yee v. Escondido* (1992) 503 U.S. 519, 527 [112 S.Ct. 1522, 1528, 118 L.Ed.2d 153]; *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 7, 12 [32 Cal.Rptr.2d 244, 876 P.2d 1043]; *Duffy v. City of Long Beach* (1988) 201 Cal.App.3d 1352, 1358 [247 Cal.Rptr. 715].)

Likewise, we find unavailing appellant's attempt to analogize this case to *Lucas v. South Carolina Coastal Council, supra,* 505 U.S. 1003 as a denial of his "reasonable investment backed expectations." In *Lucas,* the purchaser of two lots zoned for residential use was later precluded by state legislation from erecting *any* permanent habitable structures on the lots. Unlike the plaintiff in *Lucas,* appellant here is not deprived of any significant economically beneficial use of his land.

Here, while the City has imposed limitations on the height of preexisting foliage, it is a legitimate exercise of police power which does not rise to the level of a taking. Contrary to "per se" takings, "traditional land-use regulations" such as the imposition of minimal building setbacks, parking and lighting conditions, landscaping requirements, and other design conditions "have long been held to be valid exercises of the city's traditional police power, and do not amount to a taking merely because they might incidentally restrict a use, diminish the value, or impose a cost in connection with the property. [Citations.]" (*Ehrlich v. City of Culver City, supra,* 12 Cal.4th at p. 886; *HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 518 [125 Cal.Rptr. 365, 542 P.2d 237] ["[A] zoning action which merely decreases the market value of property does not violate the constitutional provisions forbidding uncompensated taking or damaging . . ."].) "The denial of the highest and best use does not constitute an unconstitutional taking of property. [Citation.] 'Even where there is a very substantial diminution in the value of land, there is no taking. . . .' (*Long Beach Equities, Inc.* [*v. County of Ventura* (1991)] 231 Cal.App.3d [1016,] 1036 [282 Cal.Rptr. 877].)" (*Ramona Convent of the Holy Names v. City of Alhambra* (1993) 21 Cal.App.4th 10, 23 [26 Cal.Rptr.2d 140].)

It is even questionable whether there has been a diminution in the value of the land. Appellant cites the damage to his property as his loss of privacy and "utility saving cooling shade."

Appellant cannot show he has a vested right to foliage of a certain height or to a fixed amount of utility charges. In addition, appellant has not been ordered to destroy his trees, but simply to trim them. The City's resolution provides that the cost of the tree removal is to be borne by Keilbach and that reasonable replacement shrubbery is also to be purchased by him. If any of the trees or shrubs that are ordered trimmed die within one year, Keilbach is to bear the expense of a replacement tree or shrub.

While appellant cherishes his park-like privacy, the regulation of tree heights throughout the city may indirectly increase the property's value, as the city becomes known for one which has scenic vistas. (See *HFH, Ltd. v. Superior Court, supra,* 15 Cal.3d at pp. 520-521.) As for the loss of his privacy, the VRC made a specific finding, after visiting Keilbach's property, that there was no unreasonable infringement of appellant's privacy "since the subject trees limit but do not totally eliminate all viewing onto the foliage owner's property from the applicant's property."

Accordingly, we find no taking as contemplated within the Fifth Amendment of the United States Constitution or article I, section 19 of the California Constitution.

### 3. Due Process Claims

#### a. Retroactive Application

■ Appellant contends that retroactive application of the Ordinance amounts to irrational and arbitrary action. He also argues that the Ordinance allows view seekers to exact retribution against foliage owners and that the VRC did not appropriately balance the interests of the two property owners. In support of these arguments, he cites *Eastern Enterprises v. Apfel, supra,* 524 U.S. 498.

In *Eastern,* a company that formerly was in the coal mining business left that industry. Several years later, the Coal Industry Retiree Health Benefit Act of 1992 (Coal Act) was enacted, providing for assigned benefits to retirees in the coal industry. The effect of this act was to impose $50 million to $100 million worth of liability on the company based on its activities 30 to 50 years earlier. (*Eastern Enterprises v. Apfel, supra,* 524 U.S. at pp. 503, 516-517 [118 S.Ct. at pp. 2137, 2143].)

The company sued, claiming there was a taking and a violation of due process rights. (*Eastern Enterprises v. Apfel, supra,* 524 U.S. at pp. 517, 529 [118 S.Ct. at pp. 2143, 2149].) In concluding that the company's claims had merit, the Supreme Court noted that retroactive legislation is generally disfavored. It presents problems of unfairness because it can deprive citizens of legitimate expectations and upset settled transactions. (*Id.* at pp. 532, 533 [118 S.Ct. at p. 2151].) The court concluded that the length of time that the Coal Act reached back to impose liability on the company and the magnitude of the liability raised substantial fairness question.

Here, there is no automatic retroactive reach of the ordinance. Homeowners are allowed to keep foliage at the height it existed on the effective date of the Ordinance. It is only when another homeowner applies for a view restoration permit that the inquiry begins whether the foliage must be trimmed to a lower height. (See discussion, *post,* on vagueness claim.)

In addition, there is no showing that the ordinance was applied in an arbitrary or irrational manner. (*United States v. Carlton* (1994) 512 U.S. 26, 32 [114 S.Ct. 2018, 2022-2023, 129 L.Ed.2d 22].) The ordinance requires first resort to informal dispute resolution and provides for noticed hearings and rights of appeal. Keilbach and the City Council duly followed all the required steps. There is no factual basis for appellant's contention that the City or the VRC acted with an improper motive. In fact there is no reason given by appellant for Keilbach's actions against appellant other than view restoration.

b. *Uncertainty*

 Appellant contends that the ordinance is so unclear that it violates due process. He cites *Ross v. City of Rolling Hills Estates* (1987) 192 Cal.App.3d 370, 375 [238 Cal.Rptr. 561], for the tests for vagueness challenge as follows: (1) the statute must not forbid nor require the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application; (2) the language must be definite enough to provide a standard of conduct as well as a standard by which adjudicating agencies can ascertain compliance; (3) the words used should be well known enough to enable affected persons to understand and correctly apply them; they must be either of long-standing usage in the profession or industry involved or those which have be interpreted by the courts, or those which the meaning of which may be determined by knowledge and experience, or those which may be made reasonably certain by reference to common law or legislative history. (*Id.* at p. 375.)

The *Ross* case itself notes, " '[A] substantial amount of vagueness is permitted in California zoning ordinances' in order to permit delegation of broad discretionary power to administrative bodies. [Citations.]" (*Ross v. City of Rolling Hills Estates supra,* 192 Cal.App.3d at p. 376, citing *Novi v. City of Pacifica* (1985) 169 Cal.App.3d 678, 682 [215 Cal.Rptr. 439].)

The Ordinance provides at section (B)(3): "3. Foliage Obstruction. No person shall significantly impair a view from a viewing area of a lot by permitting foliage to grow to a height exceeding: [¶] a. The height determined by the view restoration commission through issuance of a view restoration permit under Section 17.02.040 (C)(2) of this chapter; or [¶] b. If no view restoration permit has been issued by the view restoration commission, a height which is the lesser of: [¶] i. The ridge line of the primary structure on the property; or [¶] ii. Sixteen feet. [¶] If foliage on the property already exceeds the provisions of subdivisions (i) and (ii) of Section 17.02.040(B)(3) of this chapter on the effective date of this section, as approved by the voters on November 7, 1989, and significantly impairs a view from a viewing area of a lot, then notwithstanding whether any person has sought or obtained issuance of a view restoration permit, the foliage owner shall not let the foliage exceed the foliage height existing on the effective date of this section (November 17, 1989). *The purpose of this paragraph is to ensure that owners of foliage which violates the provisions of this paragraph on the effective date of this section shall not allow the foliage*

*to increase in height. This paragraph does not 'grandfather' or otherwise permit such foliage to continue to block a view."[2] (Italics added.)*

Appellant contends that the final paragraph of this section is so deceptive and uncertain as to violate due process principles, as demonstrated by the minutes of the City Council meeting held on July 1, 1997. In particular, appellant argues that it is unclear whether paragraph 3.b. applies when no VRC determination has been made or to all foliage in existence at the time of enactment.

Section (B)(3) can be fairly read without resort to other materials as follows: If a property owner had trees exceeding 16 feet prior to November 17, 1989, impairing the view of a neighbor, the property owner is prohibited from letting that foliage grow any higher whether or not the neighbor has obtained a view restoration permit. The final sentence means that if the neighbor does eventually seek a permit, the trees in excess of 16 feet can be ordered to be trimmed. We do not find this section to be either deceptive, unclear or uncertain.

Appellant also contends that section (C)(2)(f) of the Ordinance, which permits the VRC to recommend removal and replacement of trees, is vague and confusing because there is no language indicating the consequences that befall a nonconsenting foliage owner. That section provides: "The view restoration commission may impose such reasonable conditions or restrictions on the approval of a view restoration permit as may be found to be appropriate or necessary to protect the public health, safety or welfare or the foliage owner's reasonable enjoyment of his or her property. Such conditions or restrictions may include, but are not limited to: (1) requiring the complete removal of the subject foliage when the commission finds that the trimming, culling, lacing or reducing of that foliage to sixteen feet or the ridge line is likely to kill the foliage, threaten the public health, safety and welfare, or will destroy the aesthetic value of the foliage that is to be pruned or reduced in height, provided that the property owner consents to the removal; and (2) requiring replacement of such foliage when the commission finds that removal without replacement will cause a significant adverse impact on: (a) the public health, safety, and welfare, (b) the privacy of the property owner, . . . provided that the property owner consents to the replacement."

We find no vagueness in this section either. The VRC is empowered to impose whatever reasonable conditions or restrictions as are appropriate or

---

[2]The last two sentences were not contained in the original Proposition M. The first of these sentences was added when Proposition M was codified, the last one added when the ordinance was amended in 1997.

necessary "as may be found to be appropriate or necessary to protect the public health, safety, or welfare" in the event that a property owner does not consent to removal or replacement. There is nothing unconstitutional about this delegation of broad discretionary power to the VRC and the City. (*Ross v. City of Rolling Hill Estates, supra*, 192 Cal.App.3d at p. 376.)

### Disposition

The judgment of the superior court is affirmed.

Vogel (C. S.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied January 30, 2001, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 21, 2001. Kennard, J., did not participate therein.