Filed 6/11/15  City of Indian Wells v. Lawellin CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CITY OF INDIAN WELLS, | |
| Plaintiff and Respondent, | E060000 |
| v. | (Super.Ct.No. INC1206444) |
| DOUGLAS A. LAWELLIN et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge.
Affirmed.

Franceschi Law Corporation and Ernest J. Franceschi, Jr. for Defendants and
Appellants.

Best Best & Krieger and Douglas S. Phillips for Plaintiff and Respondent.

I

INTRODUCTION

This matter concerns a tall ficus tree hedge located on defendants Douglas

Lawellin and Steven Rohlin's (defendants) residential property.  The hedge violates the

1

City of Indian Wells' (City) zoning ordinance limiting the height of hedges to a maximum of nine feet (Ordinance 652). After a neighbor complained the hedge was blocking her view of the desert mountains, the City filed an application to abate the hedge as a public nuisance. Defendants appeal from judgment entered following the trial court granting the City's application for an abatement warrant and motion for attorney fees and costs.

Defendants contend the City failed to prove the hedge constituted a public nuisance and the City does not have authority to abate the hedge as a private nuisance. Defendants further assert that Ordinance 652's expansive definition of a public nuisance is preempted by state statutory nuisance law. Defendants also argue that, even if the hedge qualifies as a nuisance under Ordinance 652, the hedge is a permissible nonconforming land use exempt from abatement. In addition, defendants contend the trial court abused its discretion in granting the City's motion for attorney fees and costs.

We conclude Ordinance 652, limiting the height of hedges on residential property, is enforceable as a valid exercise of the City's police power related to promoting public welfare and comfort, and is not preempted by state law. It is undisputed defendants' hedge violates Ordinance 652 and therefore constitutes a nuisance per se subject to abatement under the ordinance. Defendants' hedge does not qualify as a permissible nonconforming land use. We also conclude defendants have not shown the trial court abused its discretion in awarding the City attorney fees and costs as the prevailing party. We affirm the judgment.

2

II

FACTUAL AND PROCEDURAL BACKGROUND

In August 2011, the City Council adopted Ordinance 652, effective September 2011, which amended Indian Wells Municipal Code (IWMC) section 21.50.051 hedge height standards of the City's zoning code.[1]  Subdivision (a) of IWMC section 21.50.051, as amended, provides that "no hedge within a building setback area on any single family residential lot shall exceed nine feet (9') in height . . . ."  Subdivision (c)(2) also limits side and rear yard hedges to a height of nine feet.  Before the amendment, the height limitation was six feet, and then the City stopped enforcing it in 2007.  Due to resident complaints, the City readopted the hedge height ordinance in 2011, with an increase in the height limitation from six feet to nine feet.  Subdivision (e) provides that such a hedge height violation constitutes a public nuisance.  Subdivision (f) provides authority for the City to enforce the hedge restriction by bringing an action to abate the nuisance.

In June 2008, Susan Aldridge purchased a residence on Alta Mira Drive, in Indian Wells, but did not move in until late 2010, after remodeling the residence.  Her backyard abuts the backyard of defendants' property on Vista Dorado Drive.  Defendants purchased their residence in December 2008.  The backyard of defendants' property has a tall hedge, consisting of a row of ficus trees that the previous owner planted along the perimeter fence.  The ficus hedge provides shade and blocks sand from blowing onto

_____

[1]  Ordinance 652 also amended IWMC section 21.50.053 individual shrub height standards.

3

defendants' property. The hedge was 18 to 20 feet tall when defendants purchased their property.

In February 2011, Aldridge submitted a citizen's complaint to the City, complaining that defendants' hedge was too high and was blocking her view. In September 2011, Aldridge sent the City an email noting that she was aware of the recent passage of an ordinance limiting shrubs to nine feet. Aldridge requested assistance in proceeding under the newly enacted ordinance.

The City referred Aldridge's September 2011 complaint to the City's code enforcement department, which noted it had previously sent a letter to defendants requesting defendants cut their hedge but defendants did not want to do so. City Code Enforcement Officer Bruce Pelletier inspected the hedge in September 2011, took a photo of the hedge, and sent defendants a notice of violation of IWMC section 21.50.051(c)(2), limiting the height of hedges to nine feet. Pelletier estimated that, at that point, defendants' hedge exceeded the nine-foot height maximum by seven to 15 feet. The notice of violation advised defendants they must comply with the hedge ordinance by September 21, 2011. Pelletier met with Lawellin in September 2011, and explained he was required to follow the hedge height ordinance. Pelletier requested defendants and Aldridge to meet and come to an agreement on the matter. Lawellin told Pelletier he did not intend to comply with the ordinance.

Defendants did not comply with the hedge ordinance by September 21, 2011. Pelletier issued a City administrative citation, fining defendants $100 for violating IWMC section 21.50.051, subdivision (c)(2). Defendants appealed the citation.

4

In October 2011, the City's personnel and public safety director, Mel Windsor, sent defendants a letter stating that, because of resident complaints, the City had begun enforcing its hedge height ordinance. Windsor added that he hoped defendants and their neighbors would work together to rectify the view and landscape issue.

In November 2011, defendants' administrative appeal was heard and the administrative officer upheld the citation. Pelletier issued defendants several more citations for noncompliance with the hedge height ordinance. Defendants continued to refuse to comply with Ordinance 652.

In January 2012, Windsor sent defendants a letter stating that, if defendants and Aldridge entered into a signed, written, mutual agreement and complied with all terms of the agreement, the City would waive all past citations. Defendants and Aldridge came to an agreement in which defendants agreed to trim their hedge to 14 feet but the City would not approve the proposed settlement because the proposed 14-foot hedge still violated the nine-foot height maximum. In addition, the city council would not agree to waive payment by defendants of the City's attorney fees or pay defendants' attorney fees.

In September 2012, the City filed in the trial court an application against defendants for a warrant to abate public nuisance under Code of Civil Procedure section 731 and IWMC section 21.50.051, subdivisions (c)(2) and (e). The City alleged that under the municipal code, defendants' hedge, which exceeded nine feet in height, constituted a public nuisance. Therefore the City had authority to seek summary abatement of the nuisance.

5

The trial court conducted a four-day bench trial on the application, beginning in June 2013. During the trial on the abatement application, defendants' expert witness, certified arborist Warren Miller, testified that defendants had recently trimmed the ficus hedge to 14 feet and, if trimmed further, it would likely die. The City's landscape specialist and licensed landscape contractor Ryan Bowen testified that defendants' hedge could be trimmed to nine feet without injury.

On November 7, 2013, the trial court granted the City's abatement application, authorizing the City to abate the public nuisance, which consisted of defendants' hedge exceeding nine feet in height, in violation of IWMC sections 21.50.051 and 21.50.053. As the prevailing party, the City filed an application for an award of attorney fees and costs. Defendants opposed the motion. After hearing oral argument and taking the matter under submission, the trial court issued an order on December 19, 2013, granting the City's application for attorney fees and costs. The court awarded the City $97,835.84 in attorney fees and costs.

## III

## PUBLIC NUISANCE

Defendants contend the City failed to prove defendants' hedge constituted a public nuisance under Civil Code sections 3479 and 3480.

### A. Standard of Review

The City has the burden of proof of the nuisance and the necessity for its abatement. (*Leppo v. City of Petaluma* (1971) 20 Cal.App.3d 711, 718.) We review factual issues underlying the trial court's abatement warrant authorizing the City to abate

6

a public nuisance under the substantial evidence standard. Issues of pure law are subject to de novo review. (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1164 (*Kruse*); *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1136-1137.) This case presents issues of pure law because it is undisputed defendants' hedge violated the City's nuisance ordinance, Ordinance 652, codified as IWMC section 21.50.051. Whether the hedge constitutes a public nuisance under Ordinance 652 and whether the ordinance is valid and enforceable, are questions of law which we review de novo. (*City of Dana Point v. California Coastal Com.* (2013) 217 Cal.App.4th 170, 187.)

B. *Definition of Nuisance*

Civil Code section 3479 defines a nuisance in general terms as "Anything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . ." A public nuisance is defined in Civil Code section 3480 as ". . . one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." A private nuisance is defined in Civil Code section 3481 as every nuisance not included in the definition of public nuisance in Civil Code section 3480. (Civ. Code, § 3481.)[2] "[I]n this state activities that disturb or prevent the comfortable enjoyment of property have been held to constitute nuisances even though they did not directly damage

---

[2] We recognize the City incorrectly states in its abatement application that Civil Code section 3479 defines a public nuisance. Section 3479 only provides a definition of "nuisance." Section 3480 defines "public nuisance."

the land or prevent its use." (*Venuto v. Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 126 (*Venuto*).)

*C. Negligence Per Se*

The City pleaded in its application for a warrant to abate a public nuisance that defendants' hedge of ficus trees, which was within the setback on the defendants' property, constituted a public nuisance. The hedge, which was over nine feet high, in violation of IWMC section 21.50.051, obscured defendants' neighbor's view of the mountains. Defendants argue the City did not provide substantial evidence the hedge was "injurious to health," "indecent or offensive to the senses," or "an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." (Civ. Code, § 3479.) Citing *Venuto, supra,* 22 Cal.App.3d 116, defendants assert that a hedge blocking the view from a neighboring property does not constitute a public nuisance as a matter of law.

"As a general rule, a landowner has no natural right to air, light or an unobstructed view and the law is reluctant to imply such a right. [Citations.] Such a right may be created by private parties through the granting of an easement [citations] or through the adoption of conditions, covenants and restrictions . . . or by the Legislature [citations]. Local governments may also protect views and provide for light and air through the adoption of height limits. [Citations.]" (*Pacifica Homeowners' Assn. v. Wesley Palms Retirement Community* (1986) 178 Cal.App.3d 1147, 1152.)

In *Venuto*, the plaintiffs sued a fiberglass manufacturing company, alleging public nuisance caused by emissions from the plant severely polluting the air, obstructing the

8

public view of the hills, and injuring the public's health.  The *Venuto* court held the view obstruction or interference caused by the emission of smoke and other waste matter did not constitute a nuisance.  (*Venuto, supra,* 22 Cal.App.3d at p. 127.)  The *Venuto* court stated that a building or structure is not a nuisance *merely* because it obstructs the view from neighboring property or interferes with the passage of light and air to adjoining premises.  (*Ibid.*)

The *Venuto* court noted that the nuisance rules originated from "the repudiation of the English doctrine of 'ancient lights' under which a landowner acquired, by interrupted user, an easement over adjoining property for the passage of light and air on the basis that 'it is not adapted to the conditions existing in this country and could not be applied to rapidly growing communities without working mischievous consequences to property owners.' [Citations.]  Accordingly, in this state an owner of property may construct or erect on his land any sort of structure provided it is not such as the law will pronounce it a nuisance, but it is not a nuisance *merely* because it obstructs the passage of light and air to the building of the adjoining owner or *merely* because it obstructs his view of neighboring property. [Citations.]"  (*Venuto, supra,* 22 Cal.App.3d at p. 127.)

In the instant case, the City's application for a warrant to abate a public nuisance is founded on a view obstruction caused by defendants' hedge.  The instant case, however, is distinguishable from *Venuto, supra,* 22 Cal.App.3d 116, in that defendants' hedge violated IWMC section 21.50.051, which provides that the violation constitutes a nuisance and authorizes abatement by the City code enforcement officer.  IWMC section 21.50.051, subdivision (c)(2) states:  "Allowed Height . . . (2) Side and Rear yards.

9

Neither hedge(s) nor screen planting(s) shall be allowed to grow over nine feet (9') in height within the side and rear yard building setback area.  This limitation shall be applicable only to any hedge located adjacent to a single family residential lot."

IWMC section 21.50.051, subdivisions (e) and (f), provide:  "(e) Conditions that are Nuisances.  It is a public nuisance for any person owning, leasing, occupying or having charge of any premises in the City to maintain such premises in such manner that is in violation of, or failure to comply with any provisions of this Section.  [¶] (f) Enforcement.  Upon written complaint from an homeowners' association or a person directly affected by a hedge(s) or screen planting(s) or upon independent investigation, the Code Enforcement Officer or designee may determine that such hedge(s) or screen planting(s) is maintained contrary to one or more of the provisions of Section 21.50.051 and may cause the abatement thereof pursuant to Section 8.08.070."

The City argues it is not claiming the hedge is a public nuisance under Civil Code sections 3479 and 3480.  Instead, the City is claiming the hedge is a nuisance per se under IWMC section 21.50.051, subdivisions (c) and (e).  "The concept of a nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity, or circumstance, to be a nuisance." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1206 (*Beck Development*).)  Generally, determination of a nuisance, as defined in Civil Code section 3479, "requires consideration and balancing of a variety of factors.  [Citations.]  However, where the law expressly declares something to be a nuisance, then no inquiry beyond its existence need

10

be made and in this sense its mere existence is said to be a nuisance per se. [Citation.] But, to rephrase the rule, to be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law." (*Id.* at p. 1207.) The court is not additionally required to balance competing interests, as defendants assert in the instant case. "'Nuisances *per se* are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance.' [Citations.]" (*City of Costa Mesa v. Soffer* (1992) 11 Cal.App.4th 378, 382 (*Soffer*); *Kruse, supra,* 177 Cal.App.4th at p. 1164.)

Under Government Code section 38771, cities may declare by ordinance what constitutes a nuisance. (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1086 (*Carrnshimba*); *Soffer, supra,* 11 Cal.App.4th at pp. 382-383; *City of Bakersfield v. Miller* (1966) 64 Cal.2d 93, 100 (*Miller*).) Government Code section 38771 provides: "By ordinance the city legislative body may declare what constitutes a nuisance."

Even in the absence of an ordinance declaring a nuisance under Government Code section 38771, cities are empowered to abate public nuisances. (Code Civ. Proc., § 731; *Miller, supra,* 64 Cal.2d at p. 100.) "Cities are constitutionally authorized to make and enforce within their limits all local, police and sanitary ordinances and other such regulations not in conflict with the general laws. (Cal. Const., art. XI, § 7.)" (*Soffer, supra,* 11 Cal.App.4th at p. 382; in accord, *Flahive v. City of Dana Point* (1999) 72 Cal.App.4th 241, 244 (*Flahive*).) However, a city's designation of a nuisance does not necessarily make it so. (*Leppo v. City of Petaluma* (1971) 20 Cal.App.3d 711, 718; *Flahive,* at p. 244, fn. 4.) In a nuisance per se proceeding, the court must only determine

11

whether the statutory violation occurred and whether the statute or ordinance is constitutional. (*Miller,* at p. 100; see *Soffer,* at pp. 382-383; *Carrnshimba, supra,* 215 Cal.App.4th at p. 1087.)

Defendants argue they were deprived of their due process rights because the City asserted in the trial court that the hedge violation was a public nuisance, and then changed its theory in response to defendants' appeal, arguing the hedge violation constituted a nuisance per se. We do not agree defendants were deprived of their due process rights to notice of the City's claim. The City repeatedly cited defendants for violating IWMC section 21.50.051, subdivision (c)(2), limiting the height of hedges to nine feet. Defendants continued to refuse to comply with the ordinance. Finally, in September 2012, the City filed an application against defendants for a warrant to abate public nuisance under IWMC section 21.50.051, subdivisions (c)(2) and (e). The City alleged defendants' hedge violated IWMC section 21.50.051; the hedge constituted a public nuisance; and the City therefore had authority to seek "*summary abatement*" of the nuisance.

Even though the City did not refer to the nuisance as a "nuisance per se," it was sufficiently clear from the City's abatement application allegations and the events leading to the application, that the City was seeking abatement of the hedge based on the hedge violating IWMC section 21.50.051, subdivisions (c)(2) and (e), and this constituted a nuisance per se as a matter of law. Defendants received more than adequate notice of the basis and theory of the City's abatement claim.

12

*D. Constitutionality of Ordinance 652*

Here, IWMC section 21.50.051, subdivision (e), declares a hedge in excess of nine feet, as described in subdivision (c), to be a nuisance per se. Defendants do not deny that the hedge violates IWMC section 21.50.051. Rather, defendants contend the City exceeded its legislative powers in enacting Ordinance 652 declaring defendants' hedge a public nuisance, because the hedge does not qualify as a public nuisance under Civil Code section 3480, since the hedge affects only one person, defendants' neighbor. But Government Code section 38771 provides that, "[b]y ordinance the city legislative body may declare what constitutes a nuisance," and does not specify that the nuisance must be a public nuisance.

Although Code of Civil Procedure section 731 allows the City to abate a public nuisance as defined in section 3480, there is no express prohibition against the city abating a nuisance not qualifying as a public nuisance under Civil Code section 3480. (Code Civ. Proc., § 731.) Code of Civil Procedure section 731 provides in relevant part: "An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as defined in Section 3479 of the Civil Code, and by the judgment in that action the nuisance may be enjoined or abated as well as damages recovered therefor. *A civil action may be brought* in the name of the people of the State of California *to abate a public nuisance*, as defined in Section 3480 of the Civil Code, by the district attorney or county counsel of any county in which the nuisance exists, or *by the city attorney* of any town or city in which the nuisance exists." (Italics added.) This language is, on its face, permissive rather than mandatory.

13

Code of Civil Procedure section 731 provides authority for the City to bring an action to abate a public nuisance as defined in Civil Code section 3480 but does not necessarily preclude abatement of a nuisance per se, based on a City ordinance violation, which does not qualify as a public nuisance under Civil Code section 3480. In a nuisance per se proceeding, the court need only determine whether the violation of the ordinance occurred and whether it is constitutional. (*Soffer, supra,* 11 Cal.App.4th at pp. 382-383; *Carrnshimba, supra,* 215 Cal.App.4th at p. 1087.)

Here, Ordinance 652 is constitutional. Ordinance 652 on its face appears to be an exercise of the police power designed to protect the public comfort and welfare. "As such, 'No valid objection to the constitutionality of a statute under the due process clause properly arises if it is reasonably related to promoting the public health, safety, comfort and welfare, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose.' [Citations.]" (*People v. Greene* (1968) 264 Cal.App.2d 774, 776-777 (*Greene*).) Adoption of a zoning ordinance, which is not arbitrary and does not unduly restrict the use of private property is a permissible exercise of the police power and does not violate the taking clause of the Fifth Amendment of the United States Constitution and comparable provisions of the California Constitution, even when the law restricts an existing use of the affected property. (*Hansen Brothers Enterprises, Inc. v. Board of Supervisors* (1996) 12 Cal.4th 533, 542 (*Hansen*).)

The question before us is thus whether the means provided in Ordinance 652 are reasonably appropriate to the stated objectives of the ordinance. "It is now well-established that a landowner . . . may even be required to clear weeds and unsightly

14

growth from his property, not only to reduce the fire hazard and to foster public health, but to preserve the attractiveness of the neighborhood and prevent the spread of unwanted growth." (*Greene, supra,* 264 Cal.App.2d at p. 778.) The ordinance in the instant case furthers the public interest of preserving the attractiveness of the neighborhood and preventing unwanted growth which interferes with residents' enjoyment of their homes and yards, including the ability to view the scenic desert mountains.

In *Kucera v. Lizza* (1997) 59 Cal.App.4th 1141 (*Kucera*), the owners of an apartment building sued their neighbors to compel restoration of their views, after trees on their neighbor's property grew to obstruct their bayside view. The trial court entered a defense judgment, concluding that the city ordinance, entitled "View and Sunlight Obstruction from Trees," was unconstitutional and void as preempted by state law and an arbitrary and unreasonable exercise of the police power. (*Id.* at pp. 1143-**1144**.) The Court of Appeal reversed, holding that the ordinance was directed toward a valid police power goal of preserving views and sunlight, and that there was a reasonable relationship between the city's choice of regulating obstructing trees and tree growth and the achievement of valid police power goals of preserving views and sunlight. (*Id.* at pp. 1149, 1154.)

In *Kucera,* the court rejected the defendant's substantive due process claim that enacting the ordinance regulating tree growth was not within the city's police powers to preserve views and sunlight. In addressing this issue, the *Kucera* court explained: "The constitutional measure by which we judge the validity of a land use ordinance assailed as exceeding municipal authority under the police power is whether it has a real or

15

substantial relation to the public health, safety, morals or general welfare. Conversely, it is *un*constitutional only if its provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." (*Kucera, supra,* 59 Cal.App.4th at p. 1147.)

The *Kucera* court noted that the ordinance was mainly concerned with aesthetic considerations, but that did not void the ordinance. (*Kucera, supra,* 59 Cal.App.4th at p. 1148.) "'It is well settled that the state may legitimately exercise its police powers to advance aesthetic values. . . . "The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary."' [Citations.] Those values also change over time, flexing the elastic concept of police power. 'What was at one time regarded as an improper exercise of the police power may now, because of changed living conditions, be recognized as a legitimate exercise of that power.' [Citations.] Today, aesthetic purposes alone can justify assertion of the police power. [Citations.] 'Virtually every city in this state has enacted zoning ordinances for the purpose of improving the appearance of the urban environment and the quality of metropolitan life.' [Citation.]" (*Kucera, supra,* 59 Cal.App.4th at p. 1148.)

The *Kucera* court added that "The preservation of sunlight has been recognized for nearly 40 years as a valid police power purpose supporting height limitations. 'In the exercise of the police power a local government can impose restrictions on the maximum height of buildings for the purpose of securing adequate sunlight to promote public health in general. [Citation.] And likewise such government can restrict the height of fences.' [Citation.] The ordinance here is in many applications a height limitation on trees, which

16

is directly analogous and therefore a proper police power goal.  It follows, the goal of preserving views is equally valid. . . .  'Local government may . . . protect views and provide for light and air through the adoption of height limits. . .' [citation] and, we hold, through the regulation of tree planting or growth." (*Kucera, supra,* 59 Cal.App.4th at pp. 1148-1149.)

As with Ordinance 652 in the instant case, the *Kucera* court concluded the goals of the ordinance in *Kucera* were "supported by settled case law as preserving the character of a neighborhood, since they prevent incremental tree growth which would otherwise alter preexisting vistas and receipt of light.  [Citations.]  A denial of a building permit under a view protection ordinance enacted '"[t]o protect the visual quality of highly scenic areas and maintain the rural character"' of a city [citation] was upheld against a claim of abused discretion, the court noting proper reliance on the goal of protecting the character of the area and a finding of unmitigated adverse impact on existing views." (*Kucera, supra,* 59 Cal.App.4th at pp. 1148-1149; in accord, *Ross v. City of Rolling Hills Estates* (1987) 192 Cal.App.3d 370, 375-376.)

Similarly, in *Echevarrieta v. City of Rancho Palos Verdes* (2001) 86 Cal.App.4th 472, 479, 485 (*Echevarrieta*), the court upheld abatement of a view obstruction pursuant to a city ordinance limiting the height of foliage on residential property.  In *Echevarrieta*, the city issued the plaintiff's neighbor a view restoration permit under a city ordinance limiting the height of foliage on residential property so as to preserve hillside views.  The plaintiff petitioned for a writ of mandate challenging the view restoration permit.  The trial court denied the plaintiff's petition, and the Court of Appeal affirmed.  Relying on

17

*Kucera, supra,* 59 Cal.App.4th 1141, the trial court held that the purposes of the ordinance restricting the height of foliage represented a legitimate exercise of the city's police power and did not violate the plaintiff's due process rights. (*Echevarrieta,* at pp. 479, 485.)

Here, as in *Kucera* and *Echevarrieta*, Ordinance 652 was enacted for aesthetic purposes. Aesthetic conditions have long been held to be valid exercises of a city's traditional police power. (*Kucera, supra,* 59 Cal.App.4th at p. 1149.) Ordinance 652, adopted on August 4, 2011, states the City intended to adopt Ordinance 652 to amend section 21.50.051 hedge height standards to "assist in maintaining the City's goal of a high quality residential community by insuring that hedges and shrubs are maintained at a consistent height;" to "ensure that high-quality residential development is maintained;" and to "regulate hedge and shrub heights to maintain the existing high quality residential properties."

Excessively tall hedges that obscure a neighbor's view of the surrounding desert landscape potentially diminish the neighbor's property enjoyment and use, as well as property values of adjacent properties. Assuming other residents abide by Ordinance 652 height restrictions, a violation of the ordinance restrictions would result in the nonconforming hedge being out of harmony and conformity with the maintenance standards of adjacent properties, thereby potentially detrimentally impacting the existing quality of the residential development and, in turn, lowering property values.

Because abatement of tall hedges specified in Ordinance 652 is reasonably appropriate to the stated objectives of the ordinance, the ordinance is proper and

18

enforceable as an appropriate exercise of the police power designed to protect public comfort and welfare. Even though defendants' hedge might only affect their neighbor's view of the mountains, the hedge qualifies as a per se nuisance under Ordinance 652 and the ordinance is constitutional.

*E. Preemption*

Defendants contend Ordinance 652 is preempted by statutory nuisance law. We disagree. "The state Constitution confers upon all cities and counties the power to make and enforce within their limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*. [Citations.] Local legislation in conflict with general law is void. Conflicts exist if an ordinance duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." (*Kucera, supra,* 59 Cal.App.4th at p. 1151; see *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1150 (*Big Creek Lumber*).) "Local legislation is 'duplicative' of general law when it is coextensive therewith and 'contradictory' to general law when it is inimical thereto. Local legislation enters an area 'fully occupied' by general law when the Legislature has expressly manifested its intent to fully occupy the area or when it has impliedly done so in light of recognized indicia of intent." (*Big Creek Lumber,* at p. 1150.)

The courts have been "'reluctant to infer legislative intent to preempt a field covered by municipal regulation when there is a significant local interest to be served that may differ from one locality to another.'" (*Big Creek Lumber, supra,* 38 Cal.4th at p. 1149.) When local government regulates in an area over which it traditionally has

19

exercised control, we presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute. (*Ibid.*) The party claiming state law preempts a local ordinance has the burden of demonstrating preemption. (*Ibid.*)

Defendants argue that Ordinance 652's determination that a hedge over nine feet tall constitutes a public nuisance conflicts with statutory law, which defendants argue limits ordinances to abatement of public nuisances as defined in Civil Code section 3480. Defendants assert the hedge nuisance in Ordinance 652 does not constitute a public nuisance under Civil Code section 3480 because a hedge violation is not of such magnitude as to affect "at the same time an entire community or neighborhood, or any considerable number of persons." (Civ. Code, § 3480.)

As discussed above, state law does not preclude cities from enacting an ordinance authorizing abatement of a nuisance which addresses view obstruction but does not necessarily qualify as a public nuisance under Civil Code section 3480. The only requirement is that the ordinance is constitutional. (*Carrnshimba, supra,* 215 Cal.App.4th at p. 1087.) Ordinance 652 in the instant case is constitutional as a reasonable exercise of the City's police power designed to protect public comfort and welfare. Ordinance 652 does not conflict with state nuisance law. It does not duplicate, contradict, or enter an area fully occupied by general nuisance law, either expressly or by legislative implication. (*Kucera, supra,* 59 Cal.App.4th at p. 1151; see *Big Creek Lumber, supra,* 38 Cal.4th at p. 1150.) Defendants thus have not demonstrated Ordinance 652 is preempted by state statutory nuisance law.

20

*F. Preexisting Nonconforming Use Exception*

Defendants alternatively contend their hedge is a nonconforming but permitted land use which is grandfathered in under IWMC section 21.90.030 (Ord. 387 § 1), which provides: "Non-conforming uses and structures. [¶] (a) General. Any lawful use of land, buildings or structures existing or under construction at the time this division or any revision is adopted may be continued except as provided herein, even if such use does not conform with the provisions of the category in which it is located."

The hedge height zoning ordinance at issue here, Ordinance 652, was enacted in August 2011. Defendants assert it is undisputed that their hedge predated the enactment of Ordinance 652, and defendants' and Aldridge's purchase of their properties. Indian Wells City personnel and public safety director, Melton Windsor, who was in charge of code enforcement, testified that, before the current version of Ordinance 652 was enacted in 2011, the City had repealed a previous hedge height ordinance, leaving hedges unregulated for many years. Windsor further stated that there was no way for him to be able to tell how long defendants' hedge had existed or if it predated the 2011 Ordinance 652. Windsor believed that Ordinance 387 applied to buildings and land, not to trees or plants. According to Windsor, the City's code enforcement division and its attorneys did not view the use of land as encompassing maintaining the vegetation on the land. Indian Wells City mayor, Mary Roche, testified that Windsor was responsible for enforcing Indian Wells laws and promulgating policies and procedures regarding enforcement of the City's ordinances.

21

"Zoning ordinances and other land-use regulations customarily exempt existing uses to avoid questions as to the constitutionality of their application to those uses. 'The rights of users of property as those rights existed at the time of the adoption of a zoning ordinance are well recognized and have always been protected,'" often as exempted or grandfathered nonconforming uses. (*Hansen, supra,* 12 Cal.4th at pp. 551-552.) A grandfather clause, such as Ordinance 387, allows for continuance of an existing, nonconforming use, so as to avoid an unconstitutional taking in violation of Fifth Amendment rights, and violation of due process rights.

The City argues Ordinance 652 overrides the grandfather clause, Ordinance 387, by virtue of Ordinance 652's language. We agree. Ordinance 387, codified as IWMC section 21.90.030, subdivision (a), states: "Any lawful use of land, buildings or structures existing or under construction at the time this division or any revision is adopted may be continued *except as provided herein*, even if such use does not conform with the provisions of the category in which it is located." (Ord. 652; italics added.) IWMC section 21.50.051, subdivision (a), is an exception to Ordinance 387, and therefore supersedes IWMC section 21.90.030, subdivision (a). As a consequence, even assuming defendants' hedge existed before enactment of Ordinance 652, the hedge is not exempt from Ordinance 652's hedge height restrictions.

In *Kucera*, the court held that a height limitation on preexisting foliage was a legitimate exercise of the police power and did not rise to the level of a taking. (*Kucera, supra,* 59 Cal.App.4th at p. 1149.) The *Kucera* court explained that the ordinance regulating tree growth survived a substantive due process challenge because it "does not

22

wholly proscribe the landscaping use in question; it only controls the unreasonably obstructive growth of trees in situations limited by guidelines. To borrow from the takings context, '[A]esthetic conditions have long been held to be valid exercises of the city's traditional police power, and do not amount to a taking merely because they might incidentally restrict a use, diminish the value, or impose a cost in connection with the property. [Citations.]'" (*Kucera, supra,* 59 Cal.App.4th at pp. 1149-1150; see *Echevarrieta, supra,* 86 Cal.App.4th at p. 481.)

As defendants note in their appellant's opening brief, zoning ordinances and other land-use regulations customarily exempt existing uses to avoid questions as to the constitutionality of their application to those uses. But, here, Ordinance 652, restricting the height of hedges, does not implicate defendants' constitutional due process rights or result in a taking. We conclude Ordinance 387 is inapplicable to defendants' hedge, which is therefore not exempt from Ordinance 652 height restrictions, as a preexisting, nonconforming use.

IV

ATTORNEY FEES

Defendants contend the trial court abused its discretion in granting the City's application for attorney fees and costs. Specifically, defendants argue the award was based on inadmissible hearsay declarations and there was insufficient evidence to support the award. Defendants further assert that the amount of fees requested was unreasonable because it included block-billed fees, billing for an unnecessary motion in limine, postsettlement fees the City could have avoided by accepting defendants and Aldridge's

23

settlement of the matter, and fees incurred from the first abatement action, which was dismissed. Defendants also note that, although the lead attorney for the City stated in his declaration that billing at his firm was computer generated on a monthly basis, he submitted a billing invoice summary for billing from September 2012 through November 20, 2013.

A. *Facts and Procedural Background Regarding Attorney Fees Award*

Following a four-day bench trial and issuance of a warrant authorizing City abatement of defendants' hedge nuisance, the City, as the prevailing party, filed a motion for attorney fees and costs under Code of Civil Procedure section 1033.5, subdivision (a)(10), and IWMC section 8.08.180 (b). The City requested $106,492.40 in attorney fees and $1,541.10 in code enforcement costs. The City's application for attorney fees and costs was supported by the declaration of the City's lead attorney in the case, Douglas Phillips. Phillips stated in his declaration that his law firm, Best, Best & Krieger LLP (BB&K), serves as city attorney for Indian Wells and represented the City in the action. As a partner at BB&K, Phillips represented the City in this action. Billing rates for BB&K's attorneys and staff are set pursuant to written agreement with the City.

Phillips further stated in his declaration that "All of the attorneys and staff at Best, Best & Krieger LLP are required to, and do, accurately set forth, each day, the amount of time spent on each matter for each client with a description of the nature of their activities. These time records are collected and the information is integrated into the firm's billing system. On a monthly basis, a computer-generated billing statement is created and reviewed for accuracy by the billing attorney before the bill is finalized and

24

mailed to the client for review and payments. Prior to the time the bill is sent to the client, the billing attorney may exercise his or her discretion in reducing the amount of hours actually billed to the client."

Attached to Phillips declaration was a billing statement totaling $106,492.40. Phillips stated the billing statement detailed billing rates and hours worked by BB&K attorneys on the case. The statement included dates and hours worked, billing rates, and brief descriptions of legal work performed by Phillips, associate attorney Jill Tremblay, and paralegal Marie Milovanovich. Phillips acknowledged in his declaration that "The fees incurred and the rates charged for the work are consistent with other attorneys of similar experience and competence in this area, and were necessarily incurred in the prosecution of this action." Phillips added that the City reasonably incurred $106,492.40 in attorney fees in the action.

Defendants filed opposition to the City's application for attorney fees and costs, arguing the City was not entitled to attorney fees, the trial court did not have jurisdiction to hear the application because defendant had filed a notice of appeal, the application lacked necessary supporting declarations, and the fee request was unreasonable and shocked the conscious.

In December 2013, the trial court heard and granted the City's application for attorney fees and costs. The court awarded the City $97,835.84 in fees and costs. The trial court found that, since Phillip was an officer of the court, his declaration was sufficient to verify that time spent on the case by, not only Phillips, but also Tremblay and Milovanovich, was accurately recorded and reasonable and necessary. The court

25

further found the verified time records were credible in the absence of any evidence refuting them. The court noted the case was hotly contested, involving many legal issues beyond that of a typical abatement matter. This warranted the great expenditure of attorney hours and research. The court also concluded the hourly rate charged was below the typical and normal rates charged by attorneys in the local area. The court accepted those rates as the lodestar figure. The requested amount of $106,492.40 was reduced, however, by approximately $11,000, the amount of attorney fees incurred for prosecuting the prior abatement warrant action, because the first abatement action was dismissed. The court added the sum of $2,830.80 to the fee award as reasonable fees for filing the City's reply brief and arguing its application for attorney fees and costs.

B. *Applicable Law Regarding Attorney Fees Motion*

This court reviews de novo, as a question of law, a determination of the legal basis for an award of attorney fees. (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 523.) We apply the abuse of discretion standard when reviewing a trial court's ruling on the sufficiency of evidence supporting an attorney fee award. (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 784 (*Singletary*).) The prevailing party seeking fees and costs, bears the burden of establishing entitlement to fees and costs, and documenting hours expended and hourly rates. (*Ibid.*) The court may reduce compensation on account of any failure to maintain appropriate time records. The evidence should show how much time the attorneys spent on particular claims and whether the billed hours were reasonably expended. (*Ibid.*)

26

"'Although a fee request ordinarily should be documented in great detail, it cannot be said . . . that the absence of time records and billing statements deprive[s] [a] trial court of substantial evidence to support an award . . . .' [Citation.]" (*Singletary, supra,* 206 Cal.App.4th at pp. 784-785.) Verified time statements of an attorney, as an officer of the court, "'are entitled to credence in the absence of a clear indication the records are erroneous.' [Citation.]" (*Id.* at p. 785.)

*C. Discussion*

Here, the trial court relied on Phillip's declaration as sufficient proof of hourly rates, time spent providing legal services, and the reasonableness of the time spent. "We may not reweigh on appeal a trial court's assessment of an attorney's declaration. [Citation.] 'The trial court, with declarations and supporting affidavits, [is] able to assess credibility and resolve any conflicts in the evidence. Its findings . . . are entitled to great weight.'" (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1323 (*Alnor*); in accord, *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 620.) We see no abuse of discretion under the circumstances of this case, in which the court relied on Phillip's supporting declaration and attached detailed billing statement. Defendants have not provided any evidence refuting the veracity and reasonableness of the supporting declaration and billing statement.

As to defendants' hearsay objection to the billing statement attached to Phillips declaration, the trial court appropriately overruled the objection based on the business records exception. (Evid. Code, § 1271.) Evidence Code section 1271 provides, "Evidence of a writing made as a record of an act, condition, or event is not made

27

inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Phillips' declaration provided a sufficient foundation for applying the business records hearsay exception to the billing statement. The trial court therefore did not abuse its broad discretion in relying on the billing statements under Evidence Code section 1271. "The trial judge is invested with wide discretion in determining whether a proper foundation has been laid for the admission of business records under Evidence Code section 1271. [Citations.] The exercise of that discretion will not be disturbed on appeal absent a showing of abuse. [Citation.] Where the trial court has determined that the foundation laid was sufficient to support the introduction of evidence under the business records exception, and the record reasonably supports this determination, its conclusion is binding on the appellate court." (*County of Sonoma v. Grant W.* (1986) 187 Cal.App.3d 1439, 1450.) Because the trial court's fee determination shall not be disturbed unless this court is convinced it is clearly wrong, we affirm the award of attorney fees and costs in this matter. Defendants have not established error in awarding the City $97,835.84 in attorney fees and costs. (*Alnor, supra,* 165 Cal.App.4th at p. 1322.)

28

V

DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


HOLLENHORST
Acting P. J.


MILLER
J.